[Civil No. 3733. Filed November 16, 1936.]

[62 Pac. (2d) 127.]

J. E. DAVIS, Appellant, v. N. W. CHILSON, ALA-
BAM'S FREIGHT COMPANY, MORRIS PLAN
COMPANY OF ARIZONA, HAROLD SHAW
and LESLIE SHAW, Appellees.

Messrs. O'Sullivan & Morgan and Mr. E. C. Lock-
lear, for Appellant.

Messrs. Marks & Marks, for Appellees.

LOCKWOOD, C. J.—On July 11, 1935, a judgment
was rendered in the superior court of Maricopa county
in favor of N. W. Chilson, hereinafter called plaintiff,
and against J. E. Davis, hereinafter called defendant,

and others, for the sum of $1,967.44, with interest and costs. Shortly thereafter, plaintiff secured the issuance of a writ of garnishment against Álabam's Freight Company, a corporation, hereinafter called the garnishee. The answer of the garnishee was filed July 29th, showing that defendant owned 800 shares of common and 400 shares of preferred stock in the company. Following the filing of this answer, and during the month of August, defendant negotiated with plaintiff in regard to a settlement of the original judgment, but no definite agreement was ever reached. Some three days after the last discussion as to settlement, plaintiff, without notifying either garnishee or defendant, appeared in court and asked that judgment be rendered upon the answer of the garnishee. This was immediately done and at the same time a formal written judgment against the garnishee, which directed the issuance of execution thereon for the sale of the stock garnished, was filed. No copy of this judgment was ever submitted to either garnishee or defendant, nor did they have notice thereof until long after its rendition. Execution issued on the same day, and the sheriff gave notice that the stock would be sold on the 6th day of September. In the meantime, Harold Shaw and his brother Leslie Shaw, who were officers of Alabam's Freight Company, learned of the prospective sale, and entered into an arrangement whereby the Morris Plan Company of Arizona, a corporation, appeared at the execution sale and purchased said stock for the Shaws, for the sum of $1,968. Three days later the Morris Plan Company notified the garnishee, in writing, of this purchase and requested that the stock so purchased be transferred to it. Upon receipt of this letter, Davis was notified of the situation by one of the officials of the garnishee. He immediately offered first the Morris Plan Company, and then the Shaws, what they had paid for the stock

at the sheriff's sale, and any other expenses to which they had been put, but they refused to consider an offer of anything less then $12,000. Thereafter, defendant moved to quash the execution and cancel the certificate of sale, there being many grounds set forth in the motion, among which was that the purchase price of the stock was grossly inadequate. Issue was joined on this motion by plaintiff, the Morris Plan Company and the Shaws, and a hearing was had. At this hearing the court found that the purchase price was inadequate, but nevertheless denied relief to defendant, and this appeal was taken.

 There are a number of assignments of error, but we think the case can and should be disposed of on the fifth assignment, which is that it appears the judgment rendered against the garnishee, and upon which the execution was issued and the sale of the stock conducted, was void for the reason that it was rendered in violation of rule 7 of the Uniform Rules of the Superior Court. This rule, so far as material, reads as follows:

"No judgment shall be rendered by any Superior Court unless simultaneously with such rendition there shall be filed with the clerk a formal written judgment, signed by the trial judge. When the court has arrived at a decision in any case, it shall notify the parties, and the one in whose favor the decision is to be shall prepare and present to the judge a proposed form of judgment within five days thereafter, and serve a copy thereof on the opposite party. Unless the opposite party shall endorse thereon the words 'Approved as to form,' or the equivalent, he shall have five days after such service in which to object to the form of judgment by filing a written objection and serving the same upon his opponent, and no judgment or decree shall be rendered or signed by the judge before the expiration of said five days."

We have had its construction and effect before us in numerous cases, and have invariably held that a

failure to comply with the rule renders the judgment void for want of jurisdiction on the part of the trial court to render it. *Gillespie Land etc. Co.* v. *Hamilton,* 41 Ariz. 432, 18 Pac. (2d) 1111; *Chiricahua Ranches Co.* v. *State,* 44 Ariz. 559, 39 Pac. (2d) 640; *Miller* v. *Arizona Bank,* 45 Ariz. 297, 43 Pac. (2d) 518; *Ferguson* v. *Goff,* 46 Ariz. 260, 50 Pac. (2d) 20; *Ross* v. *White,* 46 Ariz. 304, 50 Pac. (2d) 12; *Harrington* v. *White, ante,* p. 291, 61 Pac. (2d) 392, just decided. Indeed, the appellees in this case do not question either the rule or its effect, their sole contention being that it does not apply to the kind of judgment in question. Their theory seems to be that proceedings in garnishment are purely ancillary and that the rule would only apply to the original judgment between plaintiff and defendant, and not to that against the garnishee.

Garnishment is a creature of the statute, and is regulated by the terms of the statute. Sections 4258 to 4277, Revised Code of 1928, deal with the subject. They are lengthy, and it is not necessary that we set them forth in full. It appears therefrom that when an original judgment has been rendered against a defendant, the plaintiff in certain cases may require a third party to show in court whether he is in any manner indebted to the defendant, for the purpose of authorizing the plaintiff to apply such indebtedness of the garnishee to the defendant on the judgment indebtedness of the defendant to the plaintiff. The proceeding is commenced by an affidavit of the plaintiff showing the facts authorizing the issuance of the writ, together with a bond. This writ is served upon the garnishee in the same manner as a summons and complaint, although the time for answer is somewhat shorter than that provided in an ordinary action. The garnishee must answer under oath as to any indebtedness to the defendant, or any property of the latter

which is in his possession. If he fails to answer, the statute expressly says that "judgment" shall be rendered against the garnishee for the full amount of the original judgment against the defendant. If he answers that he is indebted to the defendant, again the statute requires that "judgment" shall be rendered against him. If, however, either the plaintiff or the defendant is not satisfied with the answer of the garnishee, he may controvert it and the case is then docketed and heard as a new action except that it is entitled as the original action, and an appeal from the judgment rendered in the garnishment proceeding may be taken by any of the parties in the same manner as in any civil action.

Our garnishment statutes, as is well known, are taken primarily from those of the state of Texas, and the nature of a garnishment proceeding has frequently been before the courts of that state. In the case of *Southern Surety Co.* v. *Texas Oil Clearing House*, (Tex. Com. App.) 281 S. W. 1045, 1047, the court said:

"In disposing of the case, we have treated the judgment in the garnishment case as distinct and apart from the judgment in the original case. This is as it should be. The statute contemplates that the garnishment proceeding shall be treated as a separate case, and it is so treated throughout, dependent, of course, upon the final procurement of judgment in the parent case, but, nevertheless, subject to a judicial inquiry and determination as other causes are. It has all the elements of a separate suit. It is separately tried, possibly in a different court, the judgment therein is not binding on the original defendant (unless made a party thereto, *Johson* v. *Hall*, (Tex. Civ. App.) 163 S. W. 399), either party may appeal as in ordinary cases, and, finally, the judgment rendered is enforced through the ordinary process of the court. The case, therefore, is determinable by the ordinary rules of judgments."

The same principle has been upheld in the cases of *Roberts* v. *Stoneham,* (Tex. Civ. App.) 31 S. W. (2d) 856; *Barton* v. *Montex Corp.,* (Tex. Civ. App.) 295 S. W. 950; *Blankenship & Blake Co.* v. *Moore,* (Tex. Civ. App.) 16 S. W. 780; *Smith & Davis Mfg. Co.* v. *Citizens' State Bank,* (Tex. Civ. App.) 267 S. W. 1016.

■■ We are of the opinion, therefore, that since a garnishment proceeding, after its inception, is treated in all respects, except its title, as an original independent action, and the judgment rendered therein may be appealed from independently of the judgment rendered in the original proceeding, that in reason the same rule as to manner of rendition applies to such a judgment as to any other, and that it is governed by the provisions of rule 7. In the case of *Harrington* v. *White, supra,* we have held that the rendition of any judgment until five days have elapsed after service of the proposed written judgment on the parties is void unless such written judgment has been approved as to form by such parties. *Ross* v. *White, supra; Ferguson* v. *Goff, supra.* In this case not only the form of the judgment had not been approved, but there was no pretense of any service whatever. For the foregoing reasons, the judgment upon which the execution and sale were based was void *ab initio,* and the sale must necessarily fall.

The judgment heretofore rendered against garnishee, Alabam's Freight Company, and all proceedings taken thereunder, are set aside, and the case remanded for such further proceedings as may be ·proper under the principles set forth herein.

McALISTER, J., concurs.

ROSS, J., Dissenting.—I am sorry that I cannot concur in the majority opinion. In addition to the rea-

sons I gave in my dissenting opinion in *Harrington* v. *White, ante,* p. 291, 61 Pac. (2d) 392, decided October 5, 1936, as to why rule 7 of the Uniform Rules for the Superior Courts should not be construed as mandatory when the departure therefrom is merely technical, there are other very good and cogent reasons for not invoking such rule in the present case.

In the first place, the motion by defendant Davis was one to quash the execution, set aside the sale and cancel the certificate of sale on several grounds, but none of which grounds suggested that rule 7 had not been observed in the entry of judgment. If this so-called irregularity was ever called to the attention of the trial court, it was outside the motion which was directed entirely to the avoidance of the execution and the sale thereunder. The invalidity of the judgment is first raised in this court.

In the second place, the garnishment judgment was not against defendant Davis, but against the garnishee, Alabam's Freight Company, and was entered upon the garnishee's answer which was not controverted. There is no sound reason why rule 7 should be construed as requiring "the one in whose favor the decision is to be" to serve a copy of the judgment on Davis, the judgment debtor, because the garnishment judgment ran against the garnishee and not Davis. It is true rule 7 provides for such service on the "opposite party" and by stretching the rule it might be made to include the garnishee debtor, but it was evidently intended to require service only on the one against whom the judgment was entered. The garnishee, Alabam's Freight Company, is not complaining of not being served with such copy of the judgment before its entry.

The statute, section 4271, Revised Code of 1928, was strictly complied with by the court and sheriff. It reads:

"Where the garnishee is a corporation and it appears from the answer or otherwise, that the defendant is or was when the writ of garnishment was served, the owner of any shares of stock in such corporation, or of any interest therein, the court shall render judgment ordering the sale under execution in favor of the plaintiff against the defendant of such shares or interest of the defendant, or so much thereof as may be necessary to satisfy such execution. The sale shall be conducted as other sales of personal property under execution, and the officer making such sale shall execute a transfer of such shares or interest to the purchaser, briefly reciting the judgment under which the same was sold. Such sale shall pass to the purchaser all the right, title and interest which the defendant had in such shares of stock, or in such corporation, and the officers of such corporation shall enter such sale and transfer on the books of the corporation as if the same had been made by the defendant."

Notwithstanding this clear and plain direction to the court and the officers making the sale, and the force and effect of their compliance therewith in passing title, the majority decision is that because rule 7 was not complied with, although no complaint of such noncompliance was made to the trial court and none is made here by the garnishee, everything must fall. Section 4271, *supra,* provides the court "shall render judgment ordering the sale under execution," when certain facts are present, and it may be doubted if this court by rule can change or modify the statute as rule 7 undertakes.

It seems to me that the decision is absurd, but that is not the worst of it. When the case reaches the trial court the question is: What can be done? The plaintiff Chilson is no longer interested, he having received his money through the execution sale to the Shaws. It is not likely that he will "present to the judge a proposed form of judgment within five days thereafter, and serve a copy thereof on the opposite

party,'' and unless he does, according to the majority decision, the court is without jurisdiction to enter any judgment. Just how this inexorable rule 7 can be hurdled and all parties treated fairly and equitably does not appear. Such rule does not permit any person except the person to be favored with the judgment to give the notice therein prescribed.

Davis, however, is not without remedy. The majority has said "the judgment upon which the execution and sale were based was void *ab initio*." A void judgment is no judgment. All persons acting under it or an execution issued under it are trespassers. The plaintiff, the sheriff, the purchasers and their agent are guilty of conversion and are liable for all the damages the owner of the stock may have suffered. If the plaintiff, the sheriff, and the purchasers had acted outside of the law and in disregard of the law, the law's penalties for so doing should follow, and they should be required to pay the owner any damages he may have suffered. But I insist that the failure of plaintiff to leave a copy of the proposed judgment with the court and the opposite party, as provided in rule 7, when no injury or harm could or did result to the defendant from such failure or neglect, should not be accepted by this court as a ground to nullify everything done thereunder, especially when the defendant in his motion to set aside the sale has not even mentioned such omissions as a reason for his motion, and when the record rather conclusively shows that defendant was not any too diligent in looking after the court proceedings that were had to subject his stock to the payment of his debts.

Since rule 7 was promulgated, purchasers of both personal and real property under execution sales have no title under the majority decision unless the provision of such rule as to notice has been strictly followed.

And the pity of it is that this court should have ever ruled that the observance of rule 7 as to giving notice was jurisdictional, because it is not.