Henry L. Balaban, Appellee, v. Grace Williamson Willett, Appellant. Howard L. Willett, Appellant.

Gen. No. 41,024.

Heard in the third division of this court for the first district at the December term, 1939. Opinion filed May 22, 1940. Rehearing denied June 14, 1940.

ROBERT E. CANTWELL, JR., of Chicago, for certain appellant.

CASSELS, POTTER & BENTLEY, of Chicago, for certain other appellant; MARTIN W. GROSSE, of Chicago, of counsel.

WEST & ECKHART, WILLIAM L. MORGAN and DAVID B. ROTHSTEIN, all of Chicago, for appellee; JOHN NEAL CAMPBELL, of Chicago, and WILLIAM L. MORGAN, of counsel.

HENRY L. BALABAN, *pro se.*

MR. JUSTICE HEBEL delivered the opinion of the court.

This is an appeal by Grace Williamson Willett, the judgment debtor, and Howard L. Willett, the garnishee defendant, from a judgment order entered in the trial court on June 22, 1939, finding that the plaintiff Henry L. Balaban, recover from the garnishee defendant the sum of $13,606.40.

Two issues were presented in the trial court. First, whether or not the funds sought to be reached in garnishment were subject to garnishment, and, second, whether or not the judgment against Grace Williamson Willett had been paid. .

It appears from the record that on December 5, 1934, the plaintiff, an attorney, filed his complaint against the defendant Grace Williamson Willett praying that a judgment be entered for the sum of $23,500 for attorney's fees for services performed by the plaintiff.

The garnishee defendant Howard L. Willett was named defendant in that complaint by reason of the fact that he had been theretofore served with a notice of attorney's lien for the fees claimed, inasmuch as they were earned in matters in which, it was alleged, he was a party in interest. A default was taken in the case against the defendant Grace Williamson Willett, and the defendant Howard L. Willett was dismissed. On June 5, 1935, the defendant Grace Williamson Willett filed her verified answer asking that the default be vacated, and that she be permitted to defend the claim, alleging as her defense that the plaintiff Henry L. Balaban originally agreed to represent her in one injunction matter only, free of charge; that he later demanded $475, which was paid, and denying that he had represented her in other matters as alleged in the complaint. The default was vacated, and on February 14, 1936, after a trial before a court and jury, a judgment was entered against the defendant Grace Williamson Willett for $11,750. Thereafter on March 7, 1936, the plaintiff filed his affidavit in garnishment, naming as garnishee defendants the First National Bank of Chicago, the Continental Illinois National Bank and Trust Co. of Chicago and Howard L. Willett. The causes in garnishment against the two banks were disposed of in the trial court and will no longer be considered on this appeal.

Garnishee defendant Howard L. Willett filed his answer to the interrogatories in garnishment on March 30, 1936, alleging substantially that there was due the defendant Grace Williamson Willett the sum of $1,483.33 on April 1, 1936 and $1,000 per month thereafter through April, 1939, provided that she was alive on said dates.

The funds sought to be reached in garnishment were due from the garnishee defendant to the principal defendant under an agreement entered into between the parties on the 1st day of May, A. D. 1934, by which Grace

Williamson Willett surrendered all her right, title and interest in and to the property of Howard L. Willett and the Willett Motor Coach Company, a corporation, in consideration of the payment to her of certain funds specified in the agreement and the creation, by a separate instrument, of a certain trust of which she was the beneficiary.

It is to be noted that after the service of summons in garnishment, the garnishee defendant continued to pay the sums due under the terms of the agreement, and paid to the principal debtor a sum in excess of $45,000 after the service of the summons, including a payment of $1,000 on the day after he filed his answer in this cause.

Grace Williamson Willett filed her answer on January 10, 1938, in which she alleged, substantially, that on November 24, 1936, the judgment of the plaintiff was compromised and paid by her, that she received a receipt, which is in words and figures as follows:

"11-24-36

Received payment by cash

(signed) Henry L. Balaban."

Two handwriting experts, Rudolph B. Salmon and Katherine Keeler, testified concerning the disputed receipt. Rudolph B. Salmon, who was in the courtroom at the request of the attorneys for the defendant Grace Williamson Willett, and was called as a witness by the plaintiff, testified that the signature was a forgery. Katherine Keeler, who was also called by the attorneys for the defendant, Grace Williamson Willett testified that the signature was a forgery, but that the forgery was committed by the plaintiff Henry L. Balaban who forged his own signature in order that he might be in a position to deny it later. It may also be noted here that the prime reason for the delay in the hearing of the cause was that the defendant Grace Williamson Willett who, under the terms of the agreement was

bound to defend the cause in garnishment, had prior to that time married a man named Chamberlain and moved to Prescott, Ontario in Canada.

On the 20th day of January, 1934, the defendant Grace Williamson Willett filed her complaint for separate maintenance in the superior court of Cook county against Howard L. Willett and the Willett Motor Coach Company, a corporation. All questions relating to the rights of the plaintiff, in that suit, in and to the property of the defendants were disposed of by an agreement dated May 1, 1934. This agreement recites, in part, as follows:

"Whereas, it is the intention and the desire of the parties hereto that there will be a complete, final and effective settlement of their respective rights in and to the property of each other and the property held by them jointly, and a full relinquishment of all rights, interests and claims which the one party may otherwise have upon the property of the other:

"Now, Therefore, in consideration of the premises and to accomplish the ends sought, both parties, with full knowledge of the extent, value, and character of the property owned by them separately and jointly, which disclosure was made in open Court in the above proceeding, the transcript of which and exhibits are hereby made a part hereof by reference, and of their respective incomes, obligations, and needs, do freely and voluntarily agree by and between themselves as follows:"

It appears from the record that the garnishee defendant Howard L. Willett agreed to provide $100,000 for the purchase of an annuity paying $500 per month commencing two years after the date of the agreement, the annuities to contain a spendthrift clause. He further agreed to execute a declaration of trust and to hold pursuant to the same 1,666⅔ shares of the common stock and 12⅔ shares of the preferred stock of the Willett Motor Coach Company, a corporation, in trust for

the defendant Grace Williamson Willett. He further agreed in paragraph "C" thereof that for five years after the date of the contract, the defendant guarantied to Grace Williamson Willett that her income would be not less than $17,500 a year. He further agreed in paragraph "D" thereof to personally pay to the defendant Grace Williamson Willett $1,458.33 per month in advance for a period of two years after the date of the agreement and $1,000 per month for three years thereafter. He further agreed to pay some of her personal debts amounting to $5,036. This agreement recited in the third paragraph that there were claims against the defendant Grace Williamson Willett for legal services by Henry L. Balaban, Bennison F. Bartel and Nathan William MacChesney; that Henry L. Balaban and Bennison F. Bartel had served notice of attorney's lien and that the garnishee defendant Howard L. Willett agreed to provide a sum not exceeding $3,200 to be used in settlement of all the claims, if the same could be settled for that amount; that in the event of any lawsuit or garnishment proceeding, Grace Williamson Willett would defend the same and in the event of a recovery against Howard L. Willett in excess of the sum of $3,200 he would have the right to reimburse himself for said excess out of the trust funds provided for in the agreement. In consideration thereof the parties released each other from any and all claims to the property of each other except as provided for in the contract.

The complaint for separate maintenance was amended so as to make the complaint one for divorce. The agreement was incorporated in the decree for divorce, by reference only, and its terms made a part of the judgment of the court with the same force and effect as any other judgment of a court of record.

Under the terms of the agreement the garnishee defendant paid to the principal defendant a sum totalling $70,073.27 up to the date of the entry of the order ap-

pealed from, of which more than $45,000 was paid to the principal defendant after service of summons in the garnishment proceedings.

By the terms of the agreement entered into between Mr. and Mrs. Willett the payments provided for become due and payable by Mr. Willett to Mrs. Willett on the first of each month, in the event that Mrs. Willett is then living. In the event Mrs. Willett should die prior to the first day of any given month during the five-year period, no money which otherwise might become due, would be due and payable by Mr. Willett. Such is the contention of the defendants, and they further point to the fact that by the terms of the agreement these payments did not become due and payable until the first of each month and not before, and if Mrs. Willett could not, either on the date Mr. Willett was served with garnishee summons, or on March 30, 1936, the date of the filing by Mr. Willett of his answer in garnishment, call upon Mr. Willett to pay her the instalment which became due and payable on the first of the month following the filing of Mr. Willett's answer of ''No funds,'' then Henry L. Balaban, the garnisher, could not do so either. In support of the position of these defendants they call the court's attention to the case of *Capes v. Burgess*, 135 Ill. 61, where the court said: ''The question remains, however, whether the judgment creditors of Capes can, by process of garnishment, litigate said claim for unliquidated damages and subject it to the payment of their judgment, and that is a question of law which is open for review in this court. The Appellate Court decided this question in the negative, and after maturely considering the arguments of counsel submitted here, we are disposed to concur in the conclusion reached by that court.

''The remedy by garnishment is statutory, and the question of its application to any given case or class of cases is therefore purely a matter of statutory regulation. . . . The rule is accordingly laid down by the lead-

ing text-writers on the subject of Garnishment, that in no case where the claim of the defendant against the garnishee rests in unliquidated damages can the garnishee be made liable. Drake on Attachments, sec. 548; 2 Wade on Attachment and Garnishment, sec. 447; Waples on Attachment and Garnishment, 197, . . . ''

The plaintiff calls our attention to the third paragraph of the agreement, wherein it is recited that there were claims against the defendant Grace Williamson Willett for legal services by Henry L. Balaban, Bennison F. Bartel and Nathan William MacChesney; that Balaban and Bartel had served notice of attorney's lien and that garnishee defendant Howard L. Willett agreed to provide a sum not exceeding $3,200 to be used in settlement of all the claims, if the same could be settled for that amount; that in the event of any lawsuit or garnishment proceeding, Grace Williamson Willett would defend the same and in the event of a recovery against Howard L. Willett in excess of the sum of $3,200 he would have the right to reimburse himself for said excess out of the trust funds provided for in the agreement.

The question involved seems to be does a relationship of debtor and creditor actually exist between the principal defendant and the garnishee defendant, where a fund is sought to be reached in garnishment, or is there merely a contingent relationship between the principal defendant and the garnishee defendant, the actual existence of which depends upon the happening of a condition precedent. It is submitted by the plaintiff that the agreement set up a debtor-creditor relationship between Grace Williamson Willett and Howard L. Willett without contingency. If the debtor-creditor relationship actually exists then for the purpose of garnishment the time and manner of payment are immaterial. The case of *Miller v. Scoville,* 35 Ill. App. 385, where the test above mentioned was applied. In that case the plaintiff filed an affidavit and summons in

garnishment seeking to attach a sum due upon a building contract from the garnishee defendant to the principal defendant. The contract between the parties provided that the garnishee defendant should retain 10 per cent of the contract price until it should be completed, and so certified as completed by an engineer named therein. The garnishee defendant argued that the fund retained was contingent upon the certification by the engineer and could not therefore be reached in garnishment. In affirming a judgment against the garnishee defendant in favor of the plaintiff the court said:

''The contingency, it is argued, which was to render the debt due and certain, was obtaining the engineer's certificate that the contract was performed, and until that was produced it could not be known that appellants were indebted at all. The vice in that argument lies in the assumption that the certificate of the engineer created the debt from appellants to the firm which executed the work. The words of the contract relating to the final payment are, 'party of the second part hereby agrees that whenever this contract shall be completely performed on the part of the said party of the first part, and the engineer has certified the same in writing, the said party of the second part shall, within ten days thereafter, pay to the said party of the first part any remaining sums due for the said work according to this contract.' This makes the certificate relate to the time when the debt shall be discharged; not to the creation of it. The performance of the work under the contract created the debt between the parties, but its collection by action might not be enforced till the certificates should be produced, or a legal excuse for its nonproduction shown. The contingency that will render a debt not garnishable must be one that affects the debt itself, and not the amount of it or the time or manner of payment.''

When we come to examine the contract in the in-

stant case we find that the debt sought to be reached was created by the signing of the contract between the parties, and its collection could not be enforced until the amount provided for in the contract was due. It further appears that in the instant case in this court the liability existed as of the date of the contract, for there is no provision within the four corners of the contract providing that as a condition precedent to any monthly payments Mrs. Willett must be alive on the first day of the month. This liability is fixed by the terms of the contract and the fact that the garnishment may be defeated by a condition subsequent will not defeat the debt that was due under the terms of the contract at the time the garnishment proceeding was instituted.

The plaintiff further points to the fact that the cases cited by the defendants support the plaintiff's contention namely that if the liability is fixed the time, manner and amount of payment are questions that may be determined in a garnishment suit and will not defeat the garnishment. In *Wheeler v. Chicago Title & Trust Co.*, 217 Ill. 128, the liability of the garnishee defendant did not come into existence until its appointment as executor. In *Capes for use of Haynes, Gordon & Co. v. Burgess*, 135 Ill. 61, the liability of the garnishee defendant was contingent upon a finding against him by the court. In *Schneider v. Autoist Mut. Ins. Co.*, 346 Ill. 136, the liability of the garnishee defendant was contingent upon the finding of such liability by the court. In *Hanover Fire Ins. Co. v. Conner for use of Farnum*, 20 Ill. App. 297, a judgment against the garnishee was sustained because the garnishee defendant by the terms of its policy of fire insurance had not made a filing of a proof of loss under the terms of the policy a condition precedent to recovery. Since its liability was fixed the court permitted a recovery against the garnishee even though the amount of the payment due had not been ascertained. In *Zimek for use of Fieldcamp v. Illinois Nat. Casualty Co.*, 370 Ill. 572, a judgment against the

garnishee was affirmed. The court stated: "In the present case it is said the claim is contingent because the casualty company denies that it is liable to Zimek under the terms of the policy of insurance. But defendant misconceives the nature of the contingency contemplated by the rule. A contingent claim is one where liability hinges upon some future event, which may or may not occur; it is dependent upon some condition as yet unperformed. . . . Here, whatever right Zimek has against the company has vested; all the events which can fix the garnishee with liability have taken place." As we have indicated, the debt sought to be reached is not contingent, because it is fixed in the agreement, and further, the liability does not hinge upon the happening of a future event, which may or may not happen, and, that it is subject to garnishment.

Counsel for the defendants contend that the payments made by Howard L. Willett to Grace Williamson Willett subsequent to the entry of the decree of the court on May 21, 1934, were paid as the income from a spendthrift trust which cannot be reached in a garnishment proceeding, and refer to the agreement which was entered into between the parties in contemplation of a divorce between the parties and declaration of trust which was approved and made a part of the judgment of divorce.

After stating the facts which led to the execution of the contract in question, it appears from its terms that—

"Now, Therefore, in consideration of the premises and to accomplish the ends sought, both parties, with full knowledge of the extent, value, and character of the property owned by them separately and jointly, which disclosure was made in open Court in the above proceeding, the transcript of which and exhibits are hereby made a part hereof by reference, and of their respective incomes, obligations, and needs, do freely and voluntarily agree by and between themselves as follows:

*"First:* This agreement is expressly declared by both parties to be effective only in the event the Court, upon due and proper consideration of the bill as amended and the evidence adduced in Court, shall enter a Decree of Divorce severing the bonds of matrimony. In the event the Court, upon due and proper consideration of the bill, as amended, and the evidence so adduced, shall not enter a Decree of Divorce so severing the bonds of matrimony, then this agreement shall be and become null and void.

*"Second:* Said Howard L. Willett hereby agrees to do the following things:

"A. To provide a fund of One Hundred Thousand Dollars ($100,000) to consist of cash in the amount of Thirty-four Thousand Dollars ($34,000) and his Two (2) Principal Promissory notes for Thirty-Three Thousand ($33,000) each, due on or before One and Two Years respectively from the date of this Agreement, which cash and notes shall be delivered by said Howard L. Willett to such Insurance Company or Companies as shall be selected by the Court, and cause said Insurance Company or Companies so selected to deliver to said Grace Williamson Willett its or their pure annuity policy or policies which will pay, beginning two (2) years from the date hereof, a fixed annuity of not less than Five Hundred Dollars ($500) per month for and during her lifetime. Said annuity contract or contracts shall also provide substantially as follows:

"(1) They shall be irrevocable and contain substantially the following spendthrift clause; That said annuity cannot be anticipated by her nor assigned nor be subject to levy, execution, or garnishment, and shall not in any wise be liable to any claim of any creditor of the said Grace Williamson Willett." And this contract provides further that:

"Said Howard L. Willett shall execute a Declaration of Trust whereby he will hold, as Trustee, One Thousand Six Hundred Sixty-six and Two-thirds (1,666⅔) shares of the common stock and Twelve and Two-thirds

(12⅔rds) shares of the preferred stock of the Willett Motor Coach Company, a New Jersey Corporation, now owned by him, for the use and benefit of Grace Williamson Willett." And in and by the contract that:

"Howard L. Willett guarantees to Grace Williamson Willett that her income shall be not less than Seventeen Thousand Five Hundred Dollars ($17,500) a year for the first five years from and after the date of this contract." The contract further provides by its conditions that: payments may be made for a period of two years, or until the annuity payments commence under the annuity contracts, and shall be the sum of $1,458.33 per month in advance, and thereafter, for the remaining three years of the five-year period, $1,000 per month in advance; provided, however that Howard L. Willett shall be entitled to reimburse himself for said payments so made only out of the income payable to Grace Williamson Willett by the provision of the declaration of trust. Such are the conditions provided for and must be considered as to whether the amounts so provided for payment are subject to garnishment proceedings.

The plaintiff suggests to this court that the trust must fail as against creditors, for Grace Williamson Willett did not secure the benefits of the same by way of gift but by way of purchase and, because of that fact, it is a fraud upon the creditors, and directs this court's attention to the contract and trust agreement, and states that the first question is as to the contract and trust agreement entered into by the parties; that the contract first recited that it was entered into in order to settle a cause then pending in the superior court of Cook county, Illinois, entitled *"Grace Williamson Willett v. Howard L. Willett and the Willett Motor Coach Company, a corporation,"* and that the contract further recites that it is the intention of the parties to that contract to effect a complete settlement of their respective rights in and to the property of each other and the property held by them jointly, and then the contract

further provides, that each party waives and releases the property of the other, now owned or hereafter acquired from an inchoate right of dower, claim or title, contingent, reversionary or otherwise; that each party shall be free to deal with his separate estate as if unmarried, and that Grace Williamson Willett releases any claims or demands that she then owned or would afterwards acquire against Howard L. Willett. The recitals in the contract do not present the interest, if any, that Grace Williamson Willett had in the property of Howard L. Willett or what stock, if any, she owned in the Willett Motor Coach Company, a corporation. It can be fairly assumed however that she had some present interest from the wording of the contract. By its terms she surrendered that interest and agreed to sign the necessary deeds to effect the surrender, and her right to share in the property of Howard L. Willett upon his death, and it was in consideration therefor the trust was created for her benefit, and the plaintiff cites the case of *ReQua v. Graham*, 187 Ill. 67, in support of his theory that the contract was a purchase contract. It appears in that case that the testatrix bequeathed to her husband the annual sum of $1,800 during his natural life, payable in quarterly instalments, provided he would accept the annuity in lieu of any and all claims that he might have against her estate. He so accepted. A creditor's bill was filed to subject the annuity to payment of his debts. He defended upon the theory that since the trust had in good faith been created by and had proceeded from a person other than himself it was exempt from claims of creditors under sec. 49 of ch. 22 of the Illinois Statutes then in force. That section of the statute is still the law in this State (ch. 22, § 49, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 106.12]). The question before the court in that case was whether or not the trust was created by some person other than the debtor in order to bring it within the statute. The court upon the questions involved said:

"In order to bring a case within the exception of the

statute it is necessary that the trust fund proceed from some person other than the defendant himself. If the trust fund in this case proceeded from John F. Nichols himself it does not fall within the exception of the statute and is not protected. The annuity in question was a mere offer by Mrs. Nichols to her husband for the purchase of his interest in her estate. He was at liberty to accept or reject the same, and having accepted it, he took it as a purchaser and it is subject to the payment of his debts, the same as any other legacy.'' And the court further said: (quoting from the case of *Isenhart v. Brown*, 1 Edw. Ch. 413, approved in *Carper v. Crowl*, 149 Ill. 465).

'' 'So, on the other hand, the husband offers a price for his wife's legal right of dower, which he proposes to extinguish, and if she agrees to the terms she relinquishes it and is entitled to the price. It is therefore a matter of contract or convention between them, and what she thus becomes entitled to receive is not by way of bounty, like other general bequests, but as purchase money for what she relinquishes.' In the case of *Bank of Commerce v. Chambers*, 96 Mo. 459, a husband who released his curtesy in his wife's estate, accepting in lieu thereof an income given him by her will, was regarded as a purchaser of such income and not a mere recipient of his wife's bounty, and the income was held subject to claims of his creditors, notwithstanding the provisions of the will exempting it from such claims.''

So, when we come to consider the questions involved in the instant case, Mrs. Grace Williamson Willett, the defendant, surrendered, at least, her dower interest in the estate of the garnishee defendant during his lifetime, and what she received therefor was in payment as purchase money for such surrender, and it appears that what she did amounted to nothing more than the purchase of an annuity by her or the creation of a spendthrift trust by her in her own favor with the purchase money received, and that therefore the proceeds of the

trust, both principal and income, are subject to garnishment.

The defendants complain of the dilatory tactics of the plaintiff in this action, and argue that the acts of the plaintiff were what caused a delay in the disposition of the litigation. The plaintiff answers that the defendant Grace Williamson Willett caused this delay, and not the plaintiff. The defendants agreed to defend any cause in garnishment instituted by the plaintiff, and both parties to the property settlement agreement agreed that she should have the right to make a defense of her own in any such action. According to the record she did not appear in this case until January 10, 1938, almost two years after it was filed. She had in the meantime married a Mr. Chamberlain and moved to Canada and had great difficulty in coming to Chicago for hearings. Inasmuch as she was defending upon the theory of payment of the judgment, the cause could not be disposed of until she appeared therein and she should not now be heard to complain that there was any delay in the disposal of the cause. That seems to be the reason for the delay, if any, and we do not believe from the facts it would be just to charge that the plaintiff was guilty of any delay, or that the delay was prejudicial to the rights of the garnishee defendant.

Another question which we think should be considered is as to the findings of fact of the court, which are controverted. The general rule is that a reviewing court will not disturb findings of fact of a trial court based upon conflicting evidence unless they are clearly and manifestly against the weight of the evidence, and in this case upon the facts the judge who heard and saw the witnesses was in a better position to determine the facts than is this court. In *Moore v. David J. Molloy Co.*, 222 Ill. App. 295, this court upon a like question said:

"It is also well settled that the finding of a judge to whom a cause is submitted for trial without a jury is

entitled to the same weight on controverted questions of fact as the verdict of a jury, and will not be set aside by an appellate tribunal unless it is manifestly against the weight of the evidence.''

One of the questions before the trial court was whether a receipt offered in evidence, written in long-hand and sent to Mrs. Willett, was signed by the plaintiff. It does not recite how much money was received and is dated November 24, 1936. From the testimony of Mrs. Willett it appears that she sent this money wrapped up in a brown paper package with her laundress, Mathilda Camp, to the plaintiff's office; that she did not remember the denominations of the bills; that she did not instruct the laundress to obtain a receipt for the money, that the laundress did not know what was in the package. It also appears from the evidence of a friend of Mrs. Willett that Mrs. Willett sent the $3,200 because a Mr. Warren Keith, a messenger from Mr. Balaban's office told her that the judgment could be settled for that amount; that Mrs. Willett never saw Mr. Keith in Mr. Balaban's office; that she did not call Mr. Balaban or any of her attorneys to verify Mr. Keith's statement, and she had seen Mr. Keith only once before, not in Mr. Balaban's presence. It seems from Mrs. Willett's story that Mr. Keith had returned a book, ''The Love Match,'' which it is claimed Mr. Balaban had previously borrowed from Mrs. Willett; that Mr. Keith is a resident of California and his where-abouts was unknown at the time of the hearing. Before calling on Mrs. Willett in 1936, Mr. Keith left a note for her stating ''I am passing through the City and I would like to return the book I had borrowed from you.''

The evidence is disputed, and from plaintiff's evidence it appears that he never received the $3,200; that the indorsement on plaintiff's exhibit 1 of the receipt, was not in his handwriting, and he did not know a man named Keith; that he did not borrow the book entitled

"The Love Match"; that Mathilda Camp did deliver a package to his office on November 14, 1936, consisting of papers for which she got a typewritten receipt; that he arranged a settlement for Mrs. Willett with her husband for $478,000, computing the value of real estate holdings, cash and equities, and stock in the Willett Company, which in 1933 appraised at $478,000, and this settlement Mrs. Willett refused. The settlement ultimately made was in lieu of alimony and property rights, and Mrs. Willett then discharged the plaintiff and engaged other counsel.

There is evidence of handwriting experts who passed upon the questioned documents. As to whether the plaintiff signed this purported receipt, is a question.

It is apparent that the facts were in dispute. The court passed upon them, and we are of the opinion that the evidence supports the findings of the court and that the conclusion of the court is not against the manifest weight of the evidence. We believe the court was justified in entering the judgment order finding that the plaintiff Henry L. Balaban recover from the garnishee defendant the sum of $13,606.40.

*Judgment affirmed.*

DENIS E. SULLIVAN, P. J., and BURKE, J., concur.