376 P.2d 396

W. L. WEIR, Frank Rodriquez and Catalina Rodriquez, his wife, and Emmett R. Feighner and Florence E. Feighner, his wife, Appellants,

v.

L. B. GALBRAITH dba L. B. Galbraith & Company, also Galbraith Realty and Arizona Title Guarantee & Trust Co., a corporation, Appellees.

No. 6859.

Supreme Court of Arizona.

In Division.

Nov. 29, 1962.

Emmett R. Feighner, Phoenix, for appellants.

Rawlins, Davis, Christy, Kleinman & Burrus, Phoenix, for appellees.

McFATE, Superior Court Judge.

This action was commenced in the trial court as a suit by the plaintiff, Galbraith, on a promissory note executed by defendant Weir, and a garnishment proceeding ancillary thereto. Trial in the principal action was before a jury. Trial of the garnishment action was before the court without a jury on an issue joined between the plaintiff and the garnishee-defendants. Judgment in each instance was for the plaintiff. (On September 22, 1959, this court, on motion, dismissed this appeal as to appellee Arizona Title Guarantee and Trust Company, and that company is no longer a party to the appeal.)

Prior to May 9, 1955, defendant Weir, a resident of Victoria, British Columbia, owned certain real estate in Mesa, Arizona, commonly known as Paradise Palm Trailer Court. He listed this property for sale exclusively with the Russo Realty Company of Phoenix, Arizona, through its salesman, Mrs. Nella B. Knopp. One Corbett owned certain property consisting of a seller's interest in a contract for sale of a dwelling house and motion picture theatre at Cheney, Washington. He had listed this property for sale or exchange with plaintiff Galbraith, doing business as L. B. Galbraith Co., of Phoenix, Arizona. A salesman for Galbraith contacted Weir and told him of the Corbett listing, and subsequently Galbraith entered into an agreement with Russo Realty Company, providing that if a sale or exchange of the Weir property was consummated, he, Galbraith, would receive $2,900.00 as commissions, Russo Realty Company would receive $1,400.00 and Mrs. Knopp $1,400.00.

On May 9, 1955, a written agreement was made between Corbett and Weir, under which they exchanged their respective properties. Weir suggested to Galbraith that inasmuch as no money had changed hands, Galbraith should take a note for his share of the commission, to which Galbraith agreed. This note was prepared, executed by Weir and delivered to Galbraith. When the note fell due, Weir refused to pay it and this action was commenced by Galbraith to enforce collection.

About the time of entering into the contract with Corbett, defendant Weir, in a separate and unrelated transaction sold another parcel of real estate in Arizona to Frank Rodriquez and Catalina Rodriquez, (hereafter called Rodriquez) for a sale price of $20,000.00, $1,000.00 of which was paid as a down payment, the balance to be paid at the rate of $250.00 or more per month beginning June 1, 1955. This contract was placed with the Arizona Title Guarantee and Trust Company for collection and all payments were made to that company. On May 15, 1956, after a suit had been instituted by Mrs. Knopp against Weir for her part of the commission in the Weir-Corbett transaction, (as evidenced by a note given to her by Weir on June 3, 1955) Weir executed and delivered to his lawyer Emmett R. Feighner (garnishee-defendant herein) an assignment of all his right, title and interest, as seller, in and to the Rodriquez contract of sale.

On February 7, 1957, the plaintiff Galbraith caused writs of garnishment to be served on the title company, Emmett R. Feighner and wife, (hereafter called Feighner), and Frank Rodriquez and wife, as garnishee-defendants. Each answered, denying any indebtedness to Weir. Plaintiff controverted the answers of Feighner and Rodriquez alleging that Weir retained an interest in the Rodriquez agreement of sale.

In the principal action on the note, judgment was entered for plaintiff against defendant Weir on March 26, 1958, for $4,279.49 which included principal, interest and attorney's fees. On the garnishment issue the court found in favor of the plaintiff, and awarded judgment (1) against Feighner for $452.10, plus $1,495.00 found to have been received by him under his assignment since date of service of the writ; (2) against Rodriquez for $3,932.86; and (3) against the title company for $2,250.00. Rodriquez was to receive credit for payment made on the other two judgments.

Both defendant Weir and the garnishee-defendants Rodriquez and Feighner appeal from the above judgments and also from the orders of the court denying each of their motions for a new trial.

 There are thirteen assignments of error. For their first assignment defendants allege that the complaint failed to follow the statute which required that he state plaintiff was a qualified, licensed real estate broker or salesman at the time of the transaction.[1] This defense was raised in defendants' answer. Plaintiff did not amend his complaint before trial but did so after testifying to such facts during the trial. Under Rules of Civil Procedure 15(a), 16

A.R.S. it is within the trial court's discretion to allow such an amendment. The court did not abuse its discretion in this matter and we find no merit in this assignment.

 Defendants further urge that where several real estate brokers and salesmen are to participate in the compensation arising from a real estate transaction, it is not sufficient to allege that only one of them in whose name the action to collect part of the compensation is brought was a qualified real estate broker at the time the claim arose, but that the complaint must allege that all those participating were qualified and licensed, irrespective of whether they have an interest in the litigation. We do not so construe the statute. While the obvious purpose of the statute is to protect the public from the harmful results of dealing with unlicensed persons, the language employed refers only to the plaintiff's qualifications.

 Defendants' next contention is that plaintiff was not entitled to compensation, inasmuch as he represented both Corbett and defendant Weir in the transaction without the knowledge of the latter. Weir testified that during his first contact with

1. A.R.S. § 32–2152. "Action by broker or salesman to collect compensation. An action for the collection of compensation earned may be maintained in the courts of the state by any broker or salesman. To commence the action the complaint shall allege that the plaintiff was a qualified licensed broker or salesman at the time the claim arose. Prior to hearing the action the court shall require the plaintiff to prove the alleged qualifications."

Galbraith's firm, the latter's agent sought to make a trade with Weir for the Washington properties which Corbett had listed with Galbraith, hence there was ample evidence of assent to dual representation.

■■ Defendants then urge that plaintiff Galbraith knowingly made false representations and also failed to disclose pertinent information to defendant Weir, so that the jury should have found Galbraith guilty of fraud which would preclude recovery against defendants. There is a sharp conflict in the evidence in this case on the issue of fraud, and all such conflicts must be resolved in favor of the appellees. Rossi v. Stewart, 90 Ariz. 207, 367 P.2d 242 (1961). In the face of claims of misrepresentation and failure to disclose pertinent information about the Washington property, there was evidence that plaintiff expressed some doubts about the property and suggested defendant Weir go to Washington to look it over, which he did. This was prior to the property exchange agreement which Weir later negotiated through plaintiff. There was sufficient evidence to sustain the jury's verdict on this point.

Defendants assign as further error two rulings of the trial Judge rejecting offers of evidence. One was defendants' offer of a certified copy of a judgment in favor of Weir against Corbett for $47,607.94 by the Superior Court of King County, Washington, on October 4, 1956, based on fraud and misrepresentation on the part of Corbett arising out of the transaction involved in this case. The other was an offer of the testimony of Weir, by deposition, that he had gone to Spokane to the "Recorder's Office" in August, 1955, and searched the records there and had found $11,000.00 in liens which had not been previously disclosed to him, also nearly $900,000.00 "income tax evasion liens by Uncle Sam."

■ The certified copy of judgment was not admissible, since it was rendered in an action to which plaintiff Galbraith was not a party and therefore not binding upon him. The issue here is not whether Corbett defrauded Weir, but whether plaintiff Galbraith defrauded defendant Weir, and the judgment is not evidence that he did; however, if admitted, a jury might be misled into believing so on the premise of guilt by association.

Likewise, the trial court did not err in refusing to admit the testimony of Weir as to his search of the records in the Washington Recording Office. There was no foundation to sustain his conclusions as to the legal effect of any records that he may have observed, or to connect them in time and effect with the transaction here in question.

The next assignments of error have to do with the garnishment proceedings. First, defendants claim the court erred in

denying their motion to quash the writs of garnishment because the interest of the vendor (defendant Weir) in the Rodriquez contract had been assigned to Weir's attorney, Feighner, for a valuable consideration, prior to service of the writs, and defendant Weir had no further interest therein. Second, they contend that Feighner had rendered legal services to Weir *after* service of the writs, the fair and reasonable value of which exceeded the amount received by him from Rodriquez up to date of trial, and it was error to find him indebted to Weir. Defendants' third contention is that under a contract of sale providing for installment payments and forfeiture of the interest of purchaser in event of default, a writ of garnishment is ineffective as to unmatured installments because their payment is contingent upon the terms of the contract and they may never become due and payable.

The trial court made the following findings of fact: that the assignment was made by Weir to Feighner, as Weir's attorney for payment of Feighner's attorney's fees, "and for the further purpose of having Emmett R. Feighner use the balance of the funds for taking care of all other obligations arising against W. L. Weir in the United States;" that to the date of service of the writ of garnishment on him, Feighner had expended 187 hours doing legal work for Weir at an agreed fee of $10.00 per hour and incurred $18.30 costs

and had received $2,341.40 as a result of the assignment, leaving a balance accountable to Weir of $452.10; that at the time of trial Feighner had received an additional $1,495.00; and that the title company held $2,250.00 representing payments received from Rodriquez under the contract.

As noted the court's judgment subjected all these sums to the operation of the writs of garnishment in favor of plaintiff, and entered judgment accordingly. If the facts had established that absolute title to the contract had vested in Feighner prior to service of the writs, then the debt would not have been owing to Weir and thus not garnishable. However, there was substantial evidence from the testimony of Weir and Feighner to support the trial court's finding that the assignment was not an absolute conveyance, but was in trust for the purpose of paying Feighner's attorney's fee and certain other debts of Weir, and that any surplus was to be held for Weir. The money received from the installment payments was kept in a separate account by Feighner with other trust funds and eventually he would have to settle with Weir showing what had been done with the funds.

Therefore, Weir had an interest in the contract which was subject to garnishment. Feighner had an interest therein at the date of the garnishment to the extent of his fees earned, but was account-

-able to Weir for the balance. The money in Feighner's hands and that to be paid to him under the assignment belonged to Weir until such time as Feighner performed services for Weir, in which event he could apply the money, *pro tanto*, in payment for services rendered. However, he could make no such application after a legal impoundment of the debt by a writ of garnishment. Gillespie Land & Irrigation Co. v. Jones, 63 Ariz. 535, 164 P.2d 456 (1945). But defendants contend that under the law the writ was not effective to impound installments maturing after the date of service of the writ because those installments are contingent and may never become due.

█ Garnishment is a creature of statute and is governed by the terms of the statute. Regan v. First National Bank of Arizona, 55 Ariz. 320, 101 P.2d 214 (1940); Davis v. Chilson, 48 Ariz. 366, 62 P.2d 127 (1936). Insofar as applicable to this case, our statutes [2] require a garnishee-defendant to answer upon oath, within a designated time after service of the writ of garnishment, what, if anything, he is indebted to the defendant and was when the writ was served. If the garnishee denies any indebtedness, and the answer is controverted by plaintiff and issue is joined, such issue is tried and determined by the court.

█ In Gillespie Land & Irrigation Co. v. Jones, supra at 63 Ariz. 542, 164 P.2d 456, 459, this court, after considering our garnishment statutes, said:

"From the above it is evident and conclusive that from the date of service of the writ of garnishment any amount due or found to be due from the garnishee to the defendant is in control of the court and held by the court in abeyance until the hearing has been concluded, and cannot be paid to any person except on judgment of the court."

---

2. A.R.S. § 12–1574, subd. A: "Issuance, service and return of writ; corporation as garnishee. The clerk or justice of the peace shall file the affidavit provided for in § 12–1573, and bond, if any, and immediately issue a writ of garnishment directed to the sheriff or any constable of the county where the garnishee is alleged to be, commanding him forthwith to summon the garnishee to appear before the court out of which the writ issued within the time specified in the writ, to answer upon oath what, if anything, he is indebted to defendant and was when the writ was served, and what effects if any, of defendant, he has in his possession and had when the writ was served, and what other person if any, within his knowledge is indebted to defendant or has effects belonging to defendant in his possession."

A.R.S. § 12–1585: "Judgment against garnishee. If it appears from the answer of the garnishee, or otherwise, that the garnishee is indebted to the defendant in any amount or was so indebted when the writ was served, the court shall give judgment for plaintiff against the garnishee for the amount so admitted or found to be due defendant from the garnishee unless the amount exceeds plaintiff's judgment against defendant in which case it shall be for the amount of such judgment."

Under the rule of this decision it is clear that any amount due from the garnishee to defendant at the date of service of the writ is subject to the impounding effect of the writ. However, this court has never determined whether and to what extent garnishment is effective with respect to the installments of a sale contract which *mature* subsequent to the service of the writ of garnishment.

■ If the unmatured installments under the Rodriquez contract constitute "indebtedness" which was "due" as those words are used in the garnishment statutes, and if the payment thereof is not contingent on the occurrence of any act or event, then they would be subject to the writ; otherwise they would not.[3] It is necessary then, to refer to the contract to determine the nature of the obligation created thereby. It is in the usual form. It provides that seller agrees to sell and buyer agrees to buy the real and personal property therein specifically described, for the sum of $20,000.00. The seller acknowledges receipt of $1,000.-00 paid on the purchase price and it is provided that the balance shall be paid in monthly installments of $250.00 on the first day of each month thereafter, without interest. The purchasers are obligated to pay taxes, fire insurance and also utilities and license fees in connection with the business being operated on the premises. It is further provided that on full compliance with the terms of the contract by the purchasers, they are entitled to receive a deed to the land with a title policy and a bill of sale to the personalty. In event purchasers fail to fully comply with the contract the sellers may forfeit their interest in the property, in which event payments made are to be considered rent for use and occupation. Another provision gives the seller the right to declare the entire balance due and payable in event of default.

■ It will be noted that in the contract there is no condition precedent to the buyer's obligation to pay the purchase price. That obligation is definite, fixed and absolute. It is not contingent. The purchase price balance at any time outstanding is presently owing to the seller, although the time for payment is postponed. The installments are not separate and independent debts, but are part of an entire debt created on the signing of the contract by the parties. In view of the provisions of our garnishment statutes and the terms of the contract referred to, we hold that the balance of the purchase price remaining to be paid at time of service of the writ was an "indebtedness" which was then "due" the de-

3. Brown v. Nasin, 21 Conn.Sup. 16, 142 A.2d 59 (1958); Dawson v. Bank of America Nat. Trust & Savings Ass'n., 100 Cal.App.2d 305, 223 P.2d 280 (1950); Balaban v. Willett, 305 Ill.App. 388, 27 N.E.2d 612 (1940); Goodman v. Meriden Britannia Co., 50 Conn. 139 (1882).

fendant Weir. Therefore, the trial court did not err in rendering judgment against the garnishee-defendants for an amount of money sufficient to satisfy plaintiff's demand, to be paid from those installments which had been paid by Rodriquez at the date of judgment, and sufficient unmatured installments to make up the balance.

The final issue for determination involved the question of whether the trial court exceeded its jurisdiction in entering a judgment on January 16, 1959, in favor of plaintiff and against the garnishee title company for $3,995.00 after the appellants had perfected their appeal. Appellants rely on Whitfield Transportation, Inc. v. Brooks, 81 Ariz. 136, 302 P.2d 526 (1956), wherein it is held that after an appeal to the Supreme Court has been perfected the inferior tribunal loses all jurisdiction of each and every matter connected with the case except in furtherance of the appeal.

Trial of the issues under the original garnishment proceedings resulted in a judgment dated November 5 (filed November 6), 1958, which provided, among other things, that the title company pay to the plaintiff $2,500.00 (representing installments received from Rodriquez which were in its possession at the time of the trial) and any further sums in its possession which it may have received from Rodriquez after service of the writ. That judgment further provided that Rodriquez should pay any balance remaining unsatisfied (after application of the proceeds of garnishment to his judgment) at the rate of $250.00 per month as provided for in the contract between Rodriquez and Weir "until plaintiff's judgment has been fully paid." On November 21, 1958, plaintiff caused a further writ of garnishment to be served on the title company. In its answer on November 25, 1958, the title company acknowledged that it held $3,995.00 representing payments made to it by Rodriquez under the Weir contract. On November 26, 1958, the court entered a further judgment finding that under its previous judgments, the plaintiff was entitled to receive from the title company, the $3,995.00 disclosed in its answer and ordered said sum to be paid plaintiff "as ordered by the judgment of November 5, 1958, and said payment shall constitute a satisfaction of said judgment of November 5, 1958, insofar as said judgment is against and directed to the Arizona Title Guarantee and Trust Company, a corporation, but not otherwise."

The judgment of November 26, 1958, was prematurely entered, as the time permitted by the statute (A.R.S. § 12–1589) to controvert the answer had not expired. On December 19, 1958, the court entered a judgment vacating its judgment on November 26th, but through inadvertence erroneously worded the order. This inadvertent order was corrected on December 24, 1958, and thereafter a judgment was entered

against the title company on January 16, 1959, as follows:

"This matter having been under advisement.

"It appearing to Court the final determination of Tender of Issue against Garnishee Deft., Ariz. Title Guarantee & Trust Co., filed Dec. 5, 1958, is ancillary to matters included in Notice of Appeal heretofore filed and that such final determination would be in furtherance of appeal and

"It further appearing that aforementioned Tender of Issues against Garnishee Deft. filed by Deft. W. L. Weir, Frank Rodriquez and Catalina Rodriquez, his wife, and Emmett R. Feighner and Florence E. Feighner, his wife, Garnishee Defts., raise only issues that have heretofore been tried and determined by verdict of jury and judgment of this court in this cause of action, and thus raise only matters which may be considered as redundant and immaterial under Rule 12g of Rules of Civil Procedure.

"It is Ordered striking said Tender of Issue against Garnishee Deft. filed herein on Dec. 5, 1958, and

"ORDERED granting judgment for pltf. against Garnishee Deft. Ariz. Title Guarantee & Trust Co. in sum of $3,995.00, and

"ORDERED that Garnishee Deft. Ariz. Title Guarantee & Trust Co. have judgment against Deft. W. L. Weir in sum of $100.00 for its atty's fees herein.

"ORDERED denying motion of Garnishee Deft. Ariz. Guarantee & Trust Co. to deposit funds it holds into Clerk of Superior Court of Maricopa County."

It is noted that appellant Feighner has filed a supersedeas bond in the amount of $2,375.00 which stays the execution of the judgment on garnishment in favor of Galbraith against Feighner, but inasmuch as no other supersedeas bond was filed, the execution of the judgments of the trial court against any of the other defendants have not been stayed. The other judgments therefore remain in full force and effect and the plaintiff is entitled to have them enforced pending appeal. Garnishment is an ancillary proceeding to subject property or indebtedness to payment of a judgment. The judgment of January 16, 1959 was not in furtherance of the appeal. Its only purpose was to give effect to the prior judgment of March 26, 1958, against defendant Weir. The appellants had perfected an appeal from that judgment and the judgment of November 5, 1958, which determined, among other things, that the money due from Rodriquez to Weir should be paid by Rodriquez to the title company and order-

ed payment to plaintiff of that amount in accordance with the prior adjudication. Plaintiff was entitled to the usual processes of the court as an aid in the enforcement and satisfaction of his prior judgments, unless, of course, the execution had been stayed by supersedeas, as in the case of his judgment against Feighner. Under these circumstances, we hold that the court had jurisdiction to enter its judgment on January 16, 1959.

Judgment and orders of the trial court are therefore affirmed.

UDALL, V. C. J., and LOCKWOOD, J., concur.