630 P.2d 550

**DAVIDSON–CHUDACOFF/KOL–PAK OF ARIZONA, INC., a Delaware Corporation, Plaintiff-Appellant,**

v.

**PIONEER HOTEL COMPANY, an Arizona Corporation, Defendant-Appellee,**

**Monsanto Company, Garnishee-Defendant-Appellee.**

**Nos. 1 CA–CIV 4757, 1 CA–CIV 4814.**

Court of Appeals of Arizona, Division 1.

April 28, 1981.

Rehearing Denied June 11, 1981.

Review Denied June 30, 1981.

Andrews, Merenda & Moseley, P. A., by M. B. Moseley, Phoenix, for plaintiff-appellant.

Jennings, Strouss & Salmon, by Gary G. Keltner, Phoenix, for defendant-appellee.

Chandler, Tullar, Udall & Redhair, by Robert E. Lundquist, Tucson, for garnishee-defendant-appellee.

---

## OPINION

JACOBSON, Judge.

This appeal presents two issues: (1) whether an order of sale foreclosing an attachment lien must contain a "deficiency judgment provision" and (2) whether a tort judgment which is being appealed constitutes a "debt" subject to garnishment.

The procedural posture of this litigation is somewhat involved. On September 23, 1975, the plaintiff-appellant Davidson-Chudacoff/Kol-Pak of Arizona, Inc., (D/C) obtained a judgment in the approximate amount of $30,000.00 against defendant/appellee, Pioneer Hotel Company (Pioneer). Prior to this judgment being entered, D/C had caused a writ of attachment to issue, attaching a Series No. 6 liquor license issued by the state of Arizona to Pioneer. The September 23, 1975 judgment ordered foreclosure of this attachment lien and provided:

> [T]hat special execution issue herein to the Sheriff of Maricopa County, Arizona, directing him to seize and sell the above described spirituous liquor license as under execution, according to law and the practices of this Court; that out of the proceeds of said sale there first be paid costs and expenses of said sale, and the balance of the proceeds be paid to plaintiff to apply upon the amounts adjudged to it; that the plaintiff may purchase said property at Sheriff's Sale by applying all or any portion of said indebtedness towards the purchase price.

On October 30, 1975, the sheriff sold the liquor license to D/C for $2,000.00 and D/C credited this amount to its judgment, thereby reducing the balance owed under the judgment to $29,000.00. Because of third party creditors' claims against the license, the Department of Liquor Licenses and Control did not honor the sheriff's certificate of sale and continued to renew the license annually in the name of Pioneer. Eventually these third party claims were resolved and on January 25, 1977, D/C had another general execution issue against whatever interest Pioneer held in the 1977 version of the liquor license. At the sale on this execution, D/C was again the purchaser for $500 and this sum was credited against the balance owing under the judgment.

During this period of time, Pioneer, as plaintiff, had sued Monsanto Company in United States District Court in Tucson as the result of a fire which seriously damaged the hotel owned by Pioneer. In November, 1974, Pioneer recovered a judgment against Monsanto in the sum of approximately $750,000.00. Monsanto appealed that judgment to the United States Circuit Court of Appeals. As part of that appeal, counsel for Pioneer and Monsanto entered into an agreement that the Pioneer judgment would be deemed stayed pending the appeal. This agreement took the form of a letter from Monsanto's counsel to Pioneer's counsel which provided in part:

> This will confirm our conversation by telephone in which we agreed that the judgment in favor of Pioneer Hotel against Monsanto could be treated as stayed without the necessity of filing a supersedeas bond.

The reason for this agreement was the recognition by counsel that Monsanto could in fact post such a supersedeas bond, but if required to do so "the supersedeas bond cost would simply be an additional cost on appeal which somebody ultimately would have to bear. Thus, we agree to do away with an unnecessary cost on this appeal."

Following the second sale of Pioneer's liquor license, D/C learned of the Pioneer/Monsanto judgment and caused a writ of garnishment to be served on Monsanto on March 9, 1977. At this time, the Pioneer/Monsanto appeal was still pending and Monsanto's counsel requested and obtained an open extension to answer the writ of garnishment pending disposition of that appeal.

On April 26, 1977, the Pioneer judgment against Monsanto was affirmed (*d'Hedouville v. Pioneer Hotel Co.*, 552 F.2d 886 (9th Cir. 1977)). Apparently, D/C was not informed of this affirmance. Monsanto satisfied the Pioneer judgment by payment.

Some 14 months later, after D/C learned of the affirmance and that the Pioneer judgment was paid and satisfied, it withdrew the open extension and required Monsanto to answer its writ of garnishment.

On May 12, 1978, Monsanto answered the writ, denying any sums were owed Pioneer on the date the writ was served. The basis of this denial, set forth in a subsequent answer to tender of issues, was that because of the agreement to stay execution of the Pioneer/Monsanto judgment pending appeal and the appeal itself, no "debt" was owed at the time the writ was served on March 9, 1977.

D/C controverted Monsanto's answer by a tender of issues filed May 16, 1978. On May 25, 1978, Pioneer moved to dismiss the tender issues. The basis of the motion to dismiss was Pioneer's contention that because the original judgment against it entered on September 23, 1975, ordered the foreclosure of an attachment lien and did not specifically provide for a deficiency in the event the proceeds from the foreclosure sale did not satisfy the judgment in full, by operation of law no deficiency judgment existed upon which garnishment could issue.

Prior to the ruling on Pioneer's motion to dismiss, Monsanto moved to quash the writ of garnishment basically on the same grounds it advanced in its answer to the tender of issues.

Following a hearing on all motions, the trial court granted Pioneer's motion to dismiss tender of issues on December 15, 1978, and granted Monsanto's motion to quash the writ of garnishment on February 26, 1979. Timely appeal was taken by D/C from both of these orders.

■ We turn first to a determination of whether Pioneer's assertion that no deficiency judgment existed is correct, for if so, obviously the trial court's ruling dismissing the writ of garnishment against Monsanto can be sustained on that basis.

Pioneer's contention that no deficiency judgment exists is premised upon A.R.S. § 33–725[1] and the case of *Greater Arizona Savings & Loan Ass'n v. Gleeson*, 5 Ariz. App. 577, 429 P.2d 464 (1967).

In particular, Pioneer relies upon the following language from *Gleeson*:

It therefore appears to us and we hold that before a deficiency can be established on a mortgage or *lien foreclosure*, the judgment must specifically provide therein contingently for establishment of deficiency in the event the proceeds of the foreclosure sale are not sufficient to satisfy the judgment. (Emphasis added).

5 Ariz.App. at 579, 429 P.2d at 466.

While we may entertain some doubts as to the rationale utilized by the *Gleeson* court in reaching this conclusion, we need not base our conclusions on these doubts. Rather, we are of the opinion that *Gleeson*, if correct, and A.R.S. § 33–725 are applicable only to contractually incurred security interests and have no bearing on noncontractual liens (e. g. attachments).

A.R.S. § 33–725 appears in Title 33, Ch. 6, Art. 2, entitled "Foreclosure of Mortgages." Mortgages themselves are required to be in writing, "executed with the formalities required of a grant of real property." A.R.S. § 33–701. This type of formality requires that the instrument creating the encumbrance be "subscribed and delivered by the party disposing of the estate," and "signed by the grantor." A.R.S. § 33–401.

It is these types of contractually incurred liens to which A.R.S. § 33–725 applies. Although subsection B of that statute refers to "mortgages and other liens," these "other liens" must refer to the liens set forth in subsection A of that statute which consists of "mortgage or deed of trust." In short, we do not construe A.R.S. § 33–725 and *Gleeson's* interpretation of that statute to embrace noncontractual liens such as writs of attachment.

1. A.R.S. § 33–725 provides in part:

B. Judgments for the foreclosure of mortgages and other liens shall provide .... If the property cannot be found, or if the proceeds of the sale are insufficient to satisfy the judgment, then to make the money or any balance thereof remaining unpaid, out of other property of the defendant ....

We find support for this conclusion in Title 12, Ch. 9, Article 2 of the Arizona Revised Statutes which provides for the issuance of writs of attachment and their foreclosure. In particular, A.R.S. § 12–1532(B) provides:

> If plaintiff is given judgment, the court shall in the judgment order the proceeds of the personal property, if sold, to be applied to satisfaction of the judgment, and order the sale of the personal property remaining in the custody of the officer and of the real property levied on to satisfy the judgment, and the clerk of the court or justice of the peace shall issue special execution therefor.

Conspicuous by its absence is a requirement that the order of judgment provide for a deficiency judgment. This is logically consistent. Contractual obligations such as mortgages and deeds of trust are normally executed to secure contemporaneous or antecedent debts and the value of the security is normally commensurate with or greater than the value of the underlying debt. Such is not the case with attachments, where the value of the property seized may have little or no relationship to the underlying debt.

Moreover, attachment liens are foreclosed by special execution which under A.R.S. § 12–1562(C) simply requires the officer to "execute the special execution by selling the property directed to be sold . . . and by enforcing the collection of damages and costs as in a general execution."

We therefore hold that regardless of whether a judgment foreclosing attachment liens provides for a deficiency, a judgment creditor may have execution issued for any part of the judgment left unsatisfied by the prior attachment.

Based upon the foregoing, the trial court erred in granting Pioneer's motion to dismiss the tender of issues.

We now turn to Monsanto's contention that at the time the writ of garnishment was served upon it, it owed no debt to Pioneer by reason of the appellate posture of Pioneer's judgment.

It appears to be the general rule throughout the United States that a tort judgment is not subject to garnishment pending appeal. *See* Anno. 121 ALR 420 (1939) and the later case supplement. D/C has not cited to us any case which is contrary to this general rule, nor has our independent research disclosed a case to the contrary.

The rationale for the general rule is that prior to judgment, a claim for damages arising out of a tort action is unliquidated both as to liability and amount and therefore is not a "debt" subject to garnishment. *Lewis v. Barnett*, 139 Kan. 821, 33 P.2d 331, 93 A.L.R. 1082 (1934); Annot. 93 A.L.R. 1088 (1934). While such a claim reduced to a final judgment is liquidated both as to liability and amount, and thus subject to garnishment, *Haigler v. Burson*, 38 Ariz. 192, 298 P. 404 (1931), the effect of an appeal of that judgment is to deprive it of its finality and operate to keep alive the claim as it existed before the judgment. *Arp v. Blake*, 63 Cal.App. 362, 218 P. 773 (1923).

Although no Arizona cases are directly on point, our garnishment law supports the general rule. In Arizona, before a debt can be subject to garnishment, it must at the time the writ was served be existing, ascertainable and not contingent upon other events. *Reeb v. Interchange Resources, Inc. of Phoenix*, 106 Ariz. 458, 478 P.2d 82 (1970). Obviously, a judgment subject to reversal on appeal is subject to a contingency.

D/C argues, however, under the rationale of *Weir v. Galbraith*, 92 Ariz. 279, 376 P.2d 396 (1962), that if the debt "matures" after the writ is served, the writ is effective as to such "maturing" debts. D/C's reliance upon *Weir* is misplaced. In *Weir* the question was presented whether a writ of garnishment was effective as to an installment sales contract for installments coming due after the writ was served. In answering this question in the affirmative, the court noted that under the particular installment contract involved:

> That obligation [to pay the purchase price] is definite, fixed and absolute. It

is not contingent. The purchase price balance at any time outstanding is presently owing to the seller, although the time for payment is postponed. The installments are not separate and independent debts, but are part of an entire debt created on the signing of the contract by the parties.

92 Ariz. at 287, 376 P.2d at 401.

In this case, at the time the. writ of garnishment was served upon Monsanto, Monsanto's obligation to pay the judgment against it was not "definite, fixed and absolute." Rather, it was wholly contingent upon that judgment being affirmed upon appeal.

We see no substantial difference between a writ of garnishment being served upon the defendant in a pending court tort action and a writ being served upon a judgment tort debtor which judgment is on appeal. In both situations the ultimate liability and creation of a fixed, definite and absolute debt is subject to a contingency—the obtaining of a final judgment.

■ While we are aware that a judgment which is being appealed may be final for some purposes,[2] we are convinced by the weight of authority that such a judgment arising out of a tort action is not final for the purpose of creating a debtor-creditor relationship which will support a writ of garnishment.

We do not reach the issue of whether the letter of agreement between Pioneer's counsel and Monsanto's counsel constituted a valid stay of the Pioneer judgment. Regardless of whether a stay affected Pioneer's judgment, that stay has no bearing on whether a fixed and definite debtor-creditor relationship existed between Pioneer and Monsanto at the time the writ of garnishment was served.

The trial court correctly granted Monsanto's motion ·to quash the writ of garnishment.[3]

The order of the trial court granting Pioneer's motion to dismiss is reversed; the order quashing the writ as to Monsanto is affirmed.

HAIRE, P. J., and EUBANK, J., concur.

---

2. For example, the judgment may be *res judicata* as between the parties pending appeal. *Arizona Downs v. Superior Court*, 128 Ariz. 73, 623 P.2d 1229 (1981).

3. While the trial court more properly should have disposed of this issue on D/C's tender of issues, since the end result would have been the same, this technical error is non-prejudicial.