673 P.2d 795

**AMFAC DISTRIBUTION CORPORA-TION, a California corporation, d/b/a Amfac Electric Supply Co., Plaintiff-Appellant,**

v.

**Leslie L. MILLER and Mrs. Leslie L. Miller, his wife, Defendants-Appellees.**

1 CA–CIV 5880.

Court of Appeals of Arizona, Division 1, Department D.

May 12, 1983.

Rehearing Denied June 15, 1983.

Review Granted July 6, 1983.

Allen, McClennen & Fels, P.C., by Robert H. Allen, Phoenix, for plaintiff-appellant.

Monbleau, Vermeire & Turley, P.C., by Kent E. Turley, Phoenix, for defendants-appellees.

OPINION

MEYERSON, Judge.

I. FACTS

In this appeal, we are called upon to decide when a cause of action accrues for legal malpractice occurring in the course of litigation. The facts are as follows.

Attorney Leslie L. Miller previously represented Amfac Electric Supply Company (Amfac) in an action for materials furnished to a subcontractor but for which full payment had not been made. One day before trial, the defendants moved to dismiss the suit contending that Amfac was not qualified to do business in Arizona and was therefore prohibited from bringing an action in the state pursuant to A.R.S. § 10–124.A. The trial court allowed the complaint to be amended subject to proof as to the identity and legal status of the true plaintiff. Although several witnesses testified, the actual plaintiff's status was not clarified; the defendants renewed their motion to dismiss, and it was granted on November 18, 1977. A formal written judgment was entered dismissing the complaint on January 18, 1978. Miller appealed on Amfac's behalf but the trial judge's ruling was ultimately affirmed on September 13, 1979, by the Arizona Supreme Court. *Amfac Electric Supply Co. v. Rainer Construction Co.*, 123 Ariz. 413, 600 P.2d 26 (1979).

The present action was filed on May 6, 1980, alleging that Miller committed malpractice in his representation of Amfac in the earlier litigation by failing to name the proper party as plaintiff. Miller defended

on the ground that the action was barred by the statute of limitations. Summary judgment in favor of Miller was entered on January 23, 1981. Amfac subsequently brought this appeal.

The dispute between the parties centers around the date that Amfac's malpractice claim accrued and thus when the two-year statute of limitations began to run.[1] A.R.S. § 12–542. Amfac contends that the statute did not begin to run until the date of the final appellate court ruling on September 13, 1979. Miller contends that the malpractice claim accrued on January 18, 1978, when Amfac's suit was dismissed and when Amfac first "knew" of the malpractice. If Amfac is correct, the malpractice action was timely filed; if Miller is correct, the action was barred by the statute of limitations.[2] For the reasons explained below, the complaint was timely filed. We hold that a cause of action for legal malpractice occurring in the course of litigation accrues when the plaintiff knew or should reasonably have known of the malpractice and when the plaintiff's damages are certain and not contingent upon the outcome of an appeal.

## II. LAW

In cases of professional malpractice, "Arizona has long followed the rule that the cause of action accrues when the plaintiff knows, or in the exercise of reasonable diligence should have known, of the defendant's negligent conduct, or when the plaintiff is first able to sue." *Sato v. Van Denburgh,* 123 Ariz. 225, 227, 599 P.2d 181, 183 (1979) (citations omitted). Legal malpractice is subject to the same rule. *Long v. Buckley,* 129 Ariz. 141, 629 P.2d 557 (Ct. App.1981). When malpractice occurs in the course of litigation, however, this rule must be tempered by resort to traditional principles of law.

It is not possible to readily determine whether a lawyer's negligence occurring during litigation will ultimately result in damage to his client. Apparent damage may vanish with successful prosecution of an appeal and ultimate vindication of the attorney's conduct by an appellate court. These possibilities require that careful consideration be given to a determination of the point in time when a cause of action accrues for legal malpractice committed in the context of litigation. We are speaking of one of the essential elements of a claim for negligence—injury to the plaintiff. *Wisener v. State,* 123 Ariz. 148, 149, 598 P.2d 511, 512 (1979).

Where there has been no final adjudication of the client's case in which the malpractice allegedly occurred, the element of injury or damage remains speculative and remote, thereby making premature the cause of action for professional negligence. "Damages that are speculative, remote or uncertain may not form the basis of a judgment." *Coury Bros. Ranches, Inc. v. Ellsworth,* 103 Ariz. 515, 521, 446 P.2d 458, 464 (1968). One court has stated it this way:

> [N]o cause of action accrued until after the plaintiffs discovered or could reasonably have discovered the malpractice *and until after the judgment . . . had become final. The judgment did not become final until the Court of Appeals decided the appeal and the time to appeal to the [state] Supreme Court . . . had expired.*

*Woodruff v. Tomlin,* 511 F.2d 1019, 1021 (6th Cir.1975) (emphasis added); *see Simmons v. Ocean,* 544 F.Supp. 841 (D.V.I.1982) (cause of action accrues when negligence becomes "irreversible" leaving plaintiff with "no remaining recourse"); *Webb v. Pomeroy,* 8 Kan.App.2d 246, 655 P.2d 465

---

**1.** Although in this opinion the concepts of accrual of the cause of action and running of the statute of limitations are referred to interchangeably, we recognize that they need not be identical. For example, a cause of action could accrue but the running of the statute of limitations could be tolled because of fraud or concealment. *Jackson v. American Credit Bureau, Inc.,* 23 Ariz.App. 199, 202, 531 P.2d 932, 935 (1975).

**2.** Because Amfac does not urge on appeal that Miller breached any contractual obligations, we have not considered the applicability of A.R.S. §§ 12–543(1), –548.

(1982) (no cause of action until underlying lawsuit resolved); *Biberstine v. Woodworth,* 406 Mich. 275, 278 N.W.2d 41 (1979) (malpractice action against attorney for failing to schedule debt in bankruptcy runs from date of plaintiff's discharge in bankruptcy); *contra Woodburn v. Turley,* 625 F.2d 589 (5th Cir.1980); *see generally Annot.,* 18 A.L.R.3d 978 (1968).

For example, in *Bowman v. Abramson,* 545 F.Supp. 227 (E.D.Pa.1982), the court dismissed a legal malpractice action because there had been no resolution of the underlying lawsuit. The plaintiff alleged that his attorneys had been negligent in the conduct of two medical malpractice actions; summary judgment was entered against the plaintiff who then secured new counsel to appeal the judgments taken against him. While those appeals were pending, he instituted a legal malpractice suit against his former attorneys. The court dismissed the case finding that there was no actual controversy between the parties.

> Until the underlying medical malpractice cases are decided adversely to the plaintiff the case against his former attorneys is hypothetical and his damages are speculative.

*Id.* at 228. The court went on to state that the plaintiff had failed to show that he had been damaged "because his medical malpractice cases are still pending." *Id.* at 229. In sum, the court found that the plaintiff had not as yet been injured.

A similar conclusion was reached by a Tennessee court in *Ameraccount Club, Inc. v. Hill,* 617 S.W.2d 876 (Tenn.1981), a suit for malpractice against an attorney for negligence in filing an application for a trademark. The issue in the case was whether the one-year statute of limitations on legal malpractice actions began to run when the plaintiff first believed that its attorney was negligent in August, 1975, or in April, 1976, when the patent office finally refused to register its trademark. The court concluded that even though the plaintiff was aware of the negligence in 1975, "no damage" was suffered until the patent office finally refused to register the trademark application.

This court has reached a similar result in another context. In *Davidson-Chudacoff/Kol-Pak of Arizona, Inc. v. Pioneer Hotel Co.,* 129 Ariz. 254, 630 P.2d 550 (Ct. App.1981), we held that a judgment from which an appeal has been taken is not subject to garnishment. "[T]he effect of an appeal of [a] judgment [for damages] is to deprive it of its finality and operate to keep alive the claim as it existed before the judgment." *Id.* at 257, 630 P.2d at 553. The court concluded that at the time the writ of garnishment was served, because of the pending appeal, the obligation to pay "was wholly contingent upon that judgment being affirmed upon appeal." *Id.* at 258, 630 P.2d at 554. *See Owen v. Shores,* 24 Ariz.App. 250, 537 P.2d 978 (1975) (claim for malicious prosecution accrues when prior proceedings are terminated in plaintiff's favor).

Our holding also recognizes the practical difficulties which a client faces in gauging his attorney's actions. Even where an attorney's performance in litigation is obviously poor, most clients would not be able to make an informed judgment whether the conduct constitutes malpractice. While the client may feel that the attorney has made a mistake or exercised improper judgment, that is clearly not the same as a recognition or awareness that the particular conduct is negligent.[3] Generally, it is only when the litigation is terminated and the client's rights are "fixed" that it can safely be said that the lawyer's misdeeds resulted in injury to the client.

In addition, the professional relationship between the attorney and his client is based upon confidence and trust. *See Parsons v. Continental National American Group,* 113 Ariz. 223, 227, 550 P.2d 94, 98 (1976). If we were to hold that a cause of action for legal malpractice in litigation accrues at the time of the conduct or initial judgment rather

---

**3.** There could be some conceivable circumstances where the client obtains another professional opinion that his attorney's work during litigation is negligent. That, however, is not the case before us.

than at the time the damage has become irremedial, a client would constantly be required to second-guess his attorney and would be forced to obtain other legal opinions on the attorney's handling of the case.[4] Nothing could be more destructive of the attorney-client relationship.

These reasons have been recognized by the New York courts. Although New York has adopted the continuous representation rule,[5] the logic of the New York cases gives direct support to our holding. As one court stated:

> [A] person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered.

*Greene v. Greene,* 56 N.Y.2d 86, 94, 451 N.Y.S.2d 46, 50, 436 N.E.2d 496, 500 (1982). Our holding also recognizes that even where the client has serious reservations about how his case is being handled, he cannot be "expected to jeopardize his pending case or his relationship with the attorney handling that case during the period that the attorney continues to represent the person." *Glamm v. Allen,* 57 N.Y.2d 87, 94, 453 N.Y.S.2d 674, 677–78, 439 N.E.2d 390, 393 (1982).

Miller's argument that Amfac "discovered" the malpractice when the Arizona manager of Amfac Distribution Corporation was present during the trial misses the mark. Even though he told Miller that he believed that "Miller was wrong" in relying upon him and another gentleman to testify as to the legal status of Amfac Electric Supply Company, no cause of action accrued at that point because there had been no final adjudication of Amfac's claim. In *Bell v. Hummel and Pappas,* 136 Cal.App.3d 1009, 186 Cal.Rptr. 688 (1982), the plaintiff admitted that he discovered the possible legal malpractice in November, 1977. The court found, however, that the running of the statute of limitations was tolled, because "his damage had not fully accrued." 136 Cal.App.3d at 1017, 186 Cal.Rptr. at 694. "[N]o appreciable harm had resulted from the error until it could not be rectified, i.e., could not be remedied or cured. Up until that time, his damage was prospective and the statute of limitations was tolled." *Id.*

Miller also argues that Amfac suffered damages and was injured when the trial court dismissed its complaint in which it was seeking $30,000 and assessed it $5,000 in attorney's fees. Amfac posted a $250 cost bond and a $5,000 supersedeas bond. Thus, according to Miller, Amfac suffered injury and damage. Admittedly, at the time of the appeal in the prior action Amfac was out-of-pocket the cost associated with these bonds. The fact remains, however, that having taken an appeal, Amfac's loss, even as to those costs, was at that time completely contingent upon the outcome of the appeal.

Finally, Miller argues that to delay the accrual of Amfac's claim until the conclusion of the appellate process frustrates the purpose of the statute of limitations because it would result in the bringing of stale claims; witnesses might no longer be available or their recollection of the facts might be hazy. We believe that the concerns raised by Miller are overstated. Unlike medical malpractice or other forms of malpractice which do not occur in the course of litigation, conduct such as is the subject of this action, generally is memorialized in court pleadings or in hearing transcripts. Thus, where an attorney's malpractice occurs during litigation, the dangers associated with delay are lessened because a record will have been made of the actions which form the substance of the later malpractice action.

In conclusion, our holding not only properly reflects the time-honored principles of

---

4. This would not be an uncommon situation as 5% of American lawyers will be sued for malpractice this year. The National Law Journal, March 28, 1983, at 1.

5. The continuous representation rule provides that the statute of limitations does not run during the duration of the attorney-client relationship. *Siegel v. Kranis,* 29 A.D.2d 477, 288 N.Y.S.2d 831 (1968).

law which require that the plaintiff be damaged or injured in some way as a predicate to bringing an action for negligence, but also helps preserve the essential element of trust in the attorney-client relationship. Under our rule, a client will not have to challenge and question every decision made by his attorney or routinely double check his attorney's conduct during litigation. We must also point out that in most cases an appeal extends far beyond the two-year statute of limitations. Thus, the client will have peace of mind to allow the legal process to work fully and finally in hopes that his position will ultimately be vindicated and will not be forced to disrupt his relationship with his lawyer to preserve what he thinks may be a valid malpractice claim.

For the foregoing reasons the judgment is reversed and this matter remanded to the trial court for proceedings consistent with this opinion.

HAIRE, P.J., and EUBANK, J., concur.