930 P.2d 456

**ENVIRONMENTAL LINERS, INC., a Colorado corporation, Plaintiff, Counterdefendant–Appellee, Cross Appellant,**

v.

**RYLEY, CARLOCK & APPLEWHITE, a professional corporation, Defendant, Counterclaimant–Appellant, Cross Appellee.**

No. 1 CA–CV 94–0161.

Court of Appeals of Arizona, Division 1, Department C.

March 28, 1996.

Reconsideration Denied June 21, 1996.

Review Denied Jan. 14, 1997.

Broening, Oberg & Woods, P.C. by James B. Broening and Martha M. Burns, Phoenix, and Jan E. Cleator, P.C. by Jan E. Cleator, Phoenix, for Appellant, Cross Appellee.

Bryan Cave by Neil Vincent Wake, Phoenix, for Appellee, Cross Appellant.

## OPINION

FIDEL, Presiding Judge.

This legal malpractice case arises from the allegedly untimely filing of a mining claim. On May 4, 1989, Kelly McCabe, corporate counsel for Environmental Liners, Inc. ("Plaintiff"), asked attorney James Wees of the law firm of Ryley, Carlock & Applewhite ("Defendant") to file a mining lien on Plaintiff's behalf. The lien was intended to secure payment for materials and services supplied by Plaintiff to Cowichan Resources, Inc. ("Cowichan"), the lessee and operator of a Tombstone, Arizona, gold mine. Plaintiff worked on the mine on February 8, 1989, but did minor review and repair work at the site as late as March 28, 1989.

In order to secure a mechanics' lien on a mine or mining claim, Arizona Revised Statutes Annotated ("A.R.S.") § 33–993(A) allows an original contractor "ninety days after the completion of a building, structure or improvement, or any alteration or repair of such building, structure or improvement" to impress and secure the lien. Wees filed Plaintiff's lien with the Cochise County Recorder's Office on May 26, 1989.

Plaintiff, having received no payment from Cowichan for the materials and services it had provided, filed suit in Cochise County against Cowichan and Tombstone Development Company ("Tombstone"), the owner/lessor of the mine. That suit sought, *inter alia*, to foreclose upon the mining lien. Summary judgment on the debt was entered against Cowichan, which did not contest its liability to Plaintiff. However, the court invalidated the lien as being untimely and entered summary judgment in favor of Tombstone on the lien foreclosure claim.[1] When Cowichan filed for Chapter 11 bankruptcy protection, Plaintiff was listed as an unsecured creditor.[2] To date, Plaintiff has collected nothing.

Plaintiff filed the present action against Defendant in Maricopa County Superior Court, alleging that Defendant committed malpractice in failing to file the lien by May 9, 1989 (i.e., within ninety days after February 8). The trial court granted summary judgment in favor of Plaintiff on its malpractice claim, and Defendant then conceded its counterclaim for unpaid legal fees. The trial court also granted Plaintiff's motion for attorneys' fees incurred in opposing Defendant's counterclaim.

On appeal, Defendant raises the following issues:

1. Did the trial court err in finding that Defendant's untimely filing of Plaintiff's

---

1. The Cochise County trial court did not explicitly state its reason for granting Tombstone's motion for summary judgment. However, it is clear from the pleadings in that action that untimeliness was the basis for the court's decision, which became final after Plaintiff, acting on Defendant's advice, chose not to pursue an appeal.

2. Defendant claims Plaintiff would have been listed as a secured creditor in the bankruptcy proceeding, regardless of the validity of the mining lien, but for Kelly McCabe's failure to list Plaintiff as a judgment creditor in that action. We address that contention in Part II, note 4, *infra*.

lien breached its duty of care as a matter of law?

2. Did the trial court err in finding that Defendant's negligence was the proximate cause of loss to Plaintiff?

3. Is Plaintiff's legal malpractice action premature?

4. Is Plaintiff entitled to an award of interest at the rate provided in Plaintiff's contract with Cowichan?

5. Was the trial court's award of attorneys' fees appropriate?

Plaintiff raises the following issue on cross-appeal:

Is Plaintiff entitled to attorneys' fees under A.R.S. § 12–341.01 if it prevails in its malpractice claim against Defendant?

## I. BREACH OF DUTY

The trial court entered summary judgment on breach of duty, stating "that both Plaintiff's and Defendant's experts opined that the Defendant did not meet the standard of care for lien lawyers." Plaintiff's expert indeed rendered such an opinion. We conclude, however, that the trial court mistakenly characterized the testimony of Defendant's expert.

William Haug, an attorney knowledgeable in lien law, testified for Defendant that it was reasonable for an attorney in Wees's position to believe that May 9 was not the deadline for filing the lien under A.R.S. § 33–993. Haug added, however, that if Wees, being aware that May 9 *might* be the deadline for filing Plaintiff's lien, had not acquired sufficient information to form a judgment as to the proper resolution of the issue before that date (e.g., by researching the applicable statutes or by consulting attorneys with greater knowledge of lien law than he had), he would not have met the standard of care for lien lawyers.

Plaintiff asserts that, because Wees did not obtain sufficient information to form

a timely judgment, the foregoing testimony conveys Haug's true opinion that Wees did breach his duty of care.[3] In our view, however, this reading of Haug's deposition is too strained to support summary judgment. In the course of a lengthy deposition, Haug hypothetically addressed circumstances that would have amounted to a breach of the standard of care. But his bottom-line assessment was that Wees acted reasonably, given the time constraints Wees faced and the information he had received from Plaintiff's counsel.

The record shows that, prior to May 9, Wees consulted A.R.S. § 33–993 and learned that, under Arizona law, a contractor has "ninety days after the completion of a building, structure or improvement, or any alteration or repair of such building, structure or improvement" to file a lien. The evidence also shows that, on May 4, Plaintiff's representatives told Wees that the overall project Plaintiff helped to construct was not yet completed and that Plaintiff itself had performed work at the mine on March 28. Although a fact-finder might well determine that Wees should have done more to determine the deadline for filing Plaintiff's lien, Haug concluded otherwise, and his testimony sufficed to create a material issue of fact.

We view the evidence "in the light most favorable to the party against whom summary judgment was taken." *Gatecliff v. Great Republic Life Ins. Co.*, 170 Ariz. 34, 37, 821 P.2d 725, 728 (1991) (quoting *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 387, 682 P.2d 388, 392 (1984)). Summary judgment is appropriate only where "there is no genuine issue [of] material fact." Ariz.R.Civ.P. 56, 16 A.R.S. The party opposing summary judgment must be given the benefit of any reasonable inference to be drawn from the evidence. *Alpha Tax Serv., Inc. v. Stuart*, 158 Ariz. 169, 172, 761 P.2d 1073, 1076 (App.1988). Giving such benefit to Defendant, we conclude that the

---

3. At oral argument, Plaintiff asserted a second theory as to how Defendant was negligent in its representation of Plaintiff; according to Plaintiff, Defendant was negligent in not recommending an appeal of the Cochise County Superior Court's determination that the lien was untimely.

We decline to address this theory, as it was not raised in Plaintiff's answering brief. Further, were this the underlying theory of summary judgment, it would have necessitated a different approach to damages than that taken by the trial court and argued by the parties on appeal.

trial court mistakenly entered summary judgment for Plaintiff on the issue of breach of the standard of care.

## II. CAUSATION

Plaintiff billed Cowichan for the work done at the mine with three separate invoices, dated January 11, February 3, and February 10, 1989. Defendant argues that each invoice was a bill for a separate contract and that liens for the first two, representing the bulk of Plaintiff's charges (nearly $157,000.00 out of a total claim of just under $158,000.00), were time-barred on May 4, 1989, and therefore unaffected by Wees's conduct. Accordingly, the argument continues, even if Wees was negligent in handling the mining lien, his negligence caused essentially no damage. We address this argument because it is likely to recur on remand. We find that it has no merit.

In *S.K. Drywall, Inc. v. Developers Fin. Group, Inc.*, 169 Ariz. 345, 819 P.2d 931 (1991) our supreme court stated:

It is, of course, the rule that two or more contracts cannot be tacked together so as to extend the time within which a lien notice must be filed.... This case is not, however, governed by the foregoing rule. Where work, distinct in nature, is performed at different times, the law supposes that it is performed under distinct contracts. But when work is done or materials furnished, all going to the same general purpose, if the several parts form an entire whole or are so connected together as to show that the parties had it in contemplation that the whole would form but one and not distinct matters of settlement, the whole must be treated as a single contract.

169 Ariz. 345, 349, 819 P.2d 931, 935 (1991) (quoting *Gene McVety, Inc. v. Don Grady Homes, Inc.*, 119 Ariz. 482, 485, 581 P.2d 1132, 1135 (1978)). The court added that this standard will apply "despite the existence of separate contracts" if the circumstances indicate that "the work comprised a single project or transaction." *Id.* at 350 n. 5, 819 P.2d at 936 n. 5.

█ In this case, whether Plaintiff's invoices to Cowichan are taken to reflect a single contract or separate contracts, the underlying materials and services were indisputably the subject of a single project or transaction. Thus, according to the *S.K. Drywall* standard, the three invoices did not trigger three separate ninety-day periods for the filing of liens. Rather, the time for filing a single lien began to run from the completion of the contractor's project or obligation as a whole. *See id.*

Defendant asserts, however, that the *S.K. Drywall* standard, though applicable generally to materialmen's liens, is inapplicable in cases of mining liens, which are uniquely subject to the separate rule of *Albert Steinfeld & Co. v. Allison Mining Co.*, 41 Ariz. 340, 351, 18 P.2d 267, 271 (1933).

In *Steinfeld*, the supreme court considered the argument that, because a mining operation is continuous in nature (i.e., not an improvement or structure subject to a definite completion date), the supplier of goods to a mine is not subject to *any* statutory limitation of the time in which to file a mining lien. Rejecting that argument, the court reasoned that the purpose of lien law is to give only "the diligent laborer or materialman" the "right to burden the property of an owner without his consent." *Id.* at 350, 18 P.2d at 271. To serve that purpose, the court concluded "that liens against mining claims by original contractors must be filed within ninety days after they have completed their particular *contract.*" *Id.* at 351, 18 P.2d at 271 (emphasis added).

█ Defendant, seizing upon the word "contract," argues that under *Steinfeld* each mining contract triggers a separate ninety-day period whether or not under *S.K. Drywall* those contracts might be regarded collectively as a single transaction. We reject this interpretation, which far exceeds the meaning and purpose of the *Steinfeld* court, just as we reject the suggestion that *Steinfeld* and *S.K. Drywall* establish separate standards or rules. *S.K. Drywall* broadly defined a contract for the purpose of calculating time, stating:

[W]hen work is done or materials furnished, all going to the same general purpose, if the several parts form an entire whole or are so connected together as to

show that the parties had it in contemplation that the whole would form but one and not distinct matters of settlement, the *whole must be treated as a single contract.* 169 Ariz. at 349, 819 P.2d at 935 (emphasis added). We conclude that this definition of "contract" applies equally for purposes of mining liens as for others. That is, for mining liens as for others, "if the several parts form an entire whole ..., the whole must be treated as a single contract." *Id.* Accordingly, we hold that a lien on Plaintiff's entire claim would have been timely if filed by May 9, 1989, and reject Defendant's argument that a lien on the bulk of Plaintiff's claim already was time-barred when Plaintiff requested Defendant to file a lien on its behalf.[4]

## III. PREMATURITY

We next consider an argument that, if correct, would warrant not a remand for further proceedings but rather dismissal of this action as premature. According to Defendant, the pendency of the Cowichan bankruptcy renders damages, if any, so uncertain that Plaintiff's cause of action has not yet accrued.

In *Amfac Distribution Corp. v. Miller,* 138 Ariz. 155, 673 P.2d 795 (App.1983) this court stated that a legal malpractice action does not accrue until there has been a "final adjudication of the client's case in which the malpractice allegedly occurred, [since] the element of injury or damage remains speculative and remote." 138 Ariz. 155, 156, 673 P.2d 795, 796 (App.1983), *aff'd as supplemented,* 138 Ariz. 152, 673 P.2d 792 (1983). According to Defendant, the damage element in this case is likewise speculative and remote because all of Cowichan's creditors in the pending bankruptcy—secured *and* unsecured—might receive 100 percent of

their claims, relieving Plaintiff of any damage from the lack of a valid mining lien.

*Amfac* has twice recently been interpreted by this court. In *Lansford v. Harris,* the plaintiff alleged that her attorney conducted her bankruptcy litigation negligently. 174 Ariz. 413, 850 P.2d 126 (App.1992). On appeal, applying *Amfac,* we rejected the assertion that the malpractice action was barred by the statute of limitations, holding instead that it had not accrued until the underlying bankruptcy was resolved on appeal. *Id.* at 418, 850 P.2d at 131. Subsequently, in *Commercial Union Insurance Co. v. Lewis and Roca,* we refined and clarified the *Amfac/Lansford* rule, stating that "a cause of action for attorney negligence [accrues when] the plaintiff discovers the negligence and sustains ascertainable harm as a result of that negligence," and that "[i]t is only in the context of litigation ... that accrual of the cause of action is deferred until the litigation in which the malpractice arose is finally resolved." 183 Ariz. 250, 256, 902 P.2d 1354, 1360 (App.1995).

*Commercial Union* helps us to distinguish this case from *Amfac* and *Lansford.* This is not a case in which the *underlying* litigation is unresolved. Wees recorded the mining lien outside the scope of litigation, and its untimeliness was finally established when Plaintiff, acting on Defendant's advice, chose not to appeal the adverse ruling of the Cochise County Superior Court. To assert prematurity in this case, therefore, Defendant must persuade us to extend the *Amfac/Lansford* rule to attorney malpractice cases in which the fact and extent of the client's damages is rendered uncertain by pendency of litigation separate from, yet affecting the potential damages arising from, the litigation

4. In a separate argument on the subject of causation, Defendant asserts that any negligence on the part of Wees did not damage Plaintiff because Plaintiff would have been treated as a secured creditor in Cowichan's bankruptcy proceeding, regardless of the timeliness of the mining lien, had Plaintiff's house counsel, Kelly McCabe, listed Plaintiff as a judgment creditor in the bankruptcy action. (Defendant recorded a judgment for Plaintiff against Cowichan, though the parties dispute whether Defendant brought

the recorded judgment to the timely attention of McCabe.) The validity of this argument depends in part upon the assertion that a judgment lien against the leaseholder, Cowichan, would have permitted Plaintiff to achieve a bankruptcy recovery equal to the recovery achievable through a mining lien against the underlying fee simple interest held by Tombstone. *See* A.R.S. § 33–989. Because an assessment of ongoing bankruptcy proceedings on remand may render this issue moot, there is no need to address it here.

or transaction in which the alleged negligence occurred.

■ We need not categorically determine here whether the *Amfac/Lansford* rule should ever apply in such a case. Instead, we conclude that in the unique circumstances of this lawsuit, the trial court fashioned a practical and equitable alternative approach.

In its judgment in favor of Plaintiff, the trial court subrogated Defendant to whatever recovery Plaintiff might make under Cowichan's bankruptcy.[5] Under such a judgment, Defendant stands to lose only the difference between Plaintiff's full claim against Cowichan and any lesser amount actually paid on that claim out of Cowichan's bankruptcy; if 100 percent of Plaintiff's claim is paid, then Defendant eventually will recover the full amount of the judgment.

There remains also a theoretical possibility that even the secured creditors in the bankruptcy will receive less than the full value of their claims. In this event, Plaintiff's full recovery against Defendant would provide more than Plaintiff could have achieved as a secured bankruptcy creditor. Defendant argues that this possibility of a partial windfall also renders Plaintiff's damages too speculative to presently pursue. Defendant has not demonstrated, however, that this theoretical possibility is sufficiently tangible to preclude the trial court's approach.[6]

Because of the uncertain duration of the Cowichan bankruptcy, we conclude that the device of subrogation equitably balances the

Plaintiff's interest in not waiting indefinitely to be made whole against the Defendant's interest in paying no more damage than it has caused. For these reasons, we reject Defendant's contention that Plaintiff's cause of action is premature.

## IV. INTEREST

Plaintiff's contract with Cowichan called for an interest rate of 21 percent to be assessed on late payments. In its judgment against Defendant, the trial court awarded Plaintiff 21 percent per annum prejudgment interest on the amount of its claim against Cowichan, accruing from February 10, 1989.[7]

■ Arizona courts have held that a property owner is liable to a lienor for prejudgment interest, "so long as the amount of the claim is a liquidated sum, regardless of whether the parties are in privity." *C S & W Contractors, Inc. v. Southwest Sav. & Loan Ass'n*, 175 Ariz. 55, 62, 852 P.2d 1239, 1246 (App.1992). Accepting this holding, Defendant does not contest that it is responsible, in the event of a plaintiff's verdict upon remand, for prejudgment interest at the statutory rate of 10 percent. *See* A.R.S. § 44–1201. Defendant argues, however, that Plaintiff is not entitled to interest at the contract rate of 21 percent because Plaintiff was not in privity with Tombstone, the owner of the fee simple interest in the mine. We address this issue because it will recur in the event of a Plaintiff's judgment upon remand.[8]

5. Other courts have approved similar solutions in similar circumstances. *See Tilly v. Doe*, 49 Wash.App. 727, 746 P.2d 323, 326–27 (1987); *Khadem v. Fischer & Kagan*, 215 A.D.2d 441, 626 N.Y.S.2d 500, 502–03 (1995).

6. We additionally note that if Plaintiff's claim against Cowichan had been secured by a valid mining lien, such a lien would survive the Cowichan bankruptcy and permit foreclosure of Tombstone's fee simple interest in the mine.

7. Plaintiff billed Cowichan with three invoices in January and February of 1989. Because contract interest began to accrue on the 30th day from each invoice, theoretically, there should have been three separate dates for the commencement of interest, not one. The record reveals, however, that the trial court chose a median date of February 10 for the accrual of all interest in order to simplify the judgment. De-

fendant argues on appeal that it is disadvantaged by this decision, but does not dispute Plaintiff's avowal to the trial court that the choice of February 10 overstates the interest due by less than $45. This issue is therefore *de minimis* and we decline to discuss it further.

8. Defendant also argues that Plaintiff can recover no greater interest in this malpractice lawsuit than it could have recovered as a secured creditor in the bankruptcy. *See George v. Caton*, 93 N.M. 370, 600 P.2d 822, 830 (App.1979), *cited with approval in Elliott v. Videan*, 164 Ariz. 113, 119, 791 P.2d 639, 645 (App.1989). Plaintiff responds by disputing whether the bankruptcy plan in its form at the time of judgment was as restrictive of interest as Defendant contends. We need not dwell on this argument at this time, however, as by the time this matter concludes, the bankruptcy plan may have evolved into a different form.

386

Under A.R.S. § 33–981, a subcontractor "may have a lien only for the reasonable value of the materials furnished." *Cashway Concrete and Materials v. Sanner Contracting Co.*, 158 Ariz. 81, 82, 761 P.2d 155, 156 (App.1988) (interpreting "[the] statutory remedy designed to protect materialmen from those who do not pay their bills"). And "[r]easonable value does not include Draconian contract terms designed to coerce prompt payment." *Id.* Defendant argues, citing *Cashway*, that, because Plaintiff was not in privity with Tombstone, Plaintiff would not have been able to bind Tombstone to the 21 percent interest rate of Plaintiff's contract with Cowichan even if Plaintiff had a valid mining lien. Thus, Defendant argues, its interest obligation, in the event Plaintiff recovers upon remand, is limited to the statutory rate.

Plaintiff responds that *Cashway* does not control this case because this case concerns a section 33–989 mining lien, while *Cashway* concerned only an ordinary materialman's lien under section 33–981.

Plaintiff's argument emphasizes a difference in wording between sections 33–981 and 33–989. Subsection 33–981(A) provides for a materialman's lien on improved property "for the work or labor done or professional services, materials, machinery, fixtures or tools furnished." And subsection 33–981(B) makes the property owner "liable for the reasonable value of labor or materials furnished." Subsection 33–989(A), on the other hand, states:

A person who labors or furnishes materials or merchandise [to be used in] a mine or mining claim, and to whom any amount is due ... shall have a lien upon the mine or mining claim for the *unpaid amounts.*

(Emphasis added.) According to Plaintiff, the phrase "unpaid amounts" is more inclusive than "reasonable value of labor or materials" and includes interest at the contract rate. Plaintiff cites no cases, however, to support this construction, relying rather upon a general preference in Arizona law for mining liens over mechanic's liens. *See* A.R.S. § 33–989(C) (giving a mining lien "preference to any prior lien or encumbrance

or mortgage upon the mine or mining claim").

Plaintiff is correct that *Cashway* does not apply. Because *Cashway* turns wholly on a statutory restriction of the ordinary mechanic's lien to the "reasonable value of labor or materials furnished," it does not illuminate our interpretation of the different phrase "unpaid amounts" in section 33–989.

We do not, however, read section 33–989 to extend a mining lien to contract interest owing on labor or materials furnished to the operator of a mine. First, Plaintiff is unpersuasive in attributing a preferential gloss for mining claims to the words "unpaid amounts" in section 33–989. The same or similar words are used in other lien statutes to describe liens which lack the priority that is given mining liens. *See, e.g.,* A.R.S. §§ 33–901 (farm services lien for "unpaid amounts"); 33–984 (mill, factory, or hoisting works lien for "amount due"); 33–985 (domestic vessel lien for "amount due"); 33–988 (railroad lien for "amounts unpaid").

Second, the legislature has imposed a twenty-day notice requirement as a general prerequisite to mechanics and materialmen's liens, including mining liens. *See* A.R.S. § 33–992.01(B). Notice to the owner must include, among other things, "[a] general description of the labor, professional services, materials, machinery, fixtures or tools furnished or to be furnished and an estimate of the total price thereof." A.R.S. § 33–992.01(C)(1). The statute does not require notice of contract interest.

Third, the statute provides that a mining lien "shall attach when the labor was performed or the material or merchandise furnished." A.R.S. § 33–989(B). We have often recognized our obligation to give related statutes or sections of statutes a complementary construction. *See, e.g., State v. Buhman,* 181 Ariz. 52, 55, 887 P.2d 582, 585 (App.1994). We do not find it reasonable to stretch the words "unpaid amounts" in subsection 33–989(A) to cover contract interest that has not yet accrued when the lien attaches under subsection 33–989(B). For these reasons, we conclude that a timely mining lien, had Plaintiff achieved one against the Tombstone mine, would not have

 

extended to the interest provided in Plaintiff's contract with Cowichan. Accordingly, in the event Plaintiff recovers upon remand, any recovery of interest shall be limited to the statutory rate.

## V. ATTORNEYS' FEES

Each party has appealed the trial court's rulings on attorneys' fees—Defendant appealing the award of fees to Plaintiff on Defendant's counterclaim, and Plaintiff cross-appealing the trial court's denial of its motion for fees on the malpractice claim. We address these claims in reverse order.

### A. Cross-Appeal

 We may dispose of Plaintiff's cross-appeal summarily. When it is the gravamen of a legal malpractice claim that a lawyer has violated his implied duty to provide reasonably competent and ethical services, that claim sounds in tort, not in contract, and does not support the award of attorneys' fees under A.R.S. § 12–341.01. *Barmat v. John and Jane Doe Partners A– D,* 155 Ariz. 519, 521–23, 747 P.2d 1218, 1220–22 (1987). *Barmat* is dispositive of Plaintiff's cross-appeal. Plaintiff's principal claim arises from Defendant's alleged violation of a duty implied in law: the duty to use reasonable care in performing its undertaking to record a mining lien for Plaintiff. Under *Barmat,* this is a tort, not a breach of contract. We affirm the trial court's denial of Plaintiff's attorneys' fees on its malpractice claim.

### B. Counterclaim

By contrast, attorneys' fees expended on Defendant's counterclaim are recoverable under A.R.S. § 12–341.01. In its counterclaim, Defendant sought $12,223 in fees that Plaintiff declines to pay. The trial court dismissed the counterclaim after Defendant conceded that the court's determination that it had been negligent amounted to a finding that there had been a failure of consideration that relieved Plaintiff of the obligation to pay

the fees. Pursuant to A.R.S. § 12–341.01, the trial court awarded Plaintiff $50,000 for attorneys' fees and costs in defending the counterclaim,[9] an award Defendant challenges on appeal as "unreasonable" and "patently excessive."

In light of our disposition of other matters, we deem it premature to review the trial court's apportionment of fees to the counterclaim. Rather, because we set aside summary judgment on the malpractice claim, we vacate the counterclaim fee award, leaving it to the trial court to reconsider the question upon disposition of the entire cause of action.

## VI. CONCLUSION

We set aside the trial court's entry of summary judgment in favor of Plaintiff, and remand this case for further proceedings consistent with this opinion.

LANKFORD and SULT, JJ., concur.

---

9. The trial court apportioned to the counterclaim part of the fees that Plaintiff expended in attempting simultaneously to establish the claim that Defendant had committed malpractice and the counterclaim defense that malpractice constituted a failure of consideration.