133 F.3d 694
 97 Cal. Daily Op. Serv. 47, 98 Daily Journal
D.A.R. 93
FEDERAL DEPOSIT INSURANCE CORPORATION,
Plaintiff-Appellant-Cross-Appellee,
v.
Richard A. JACKSON, Wanda A. Jackson, Harry J. Cavanagh,
Geri Cavanagh, Clifton B. Cox, Helen Cox, Joseph A. Dupont,
Marilyn Dupont, James D. Fox, Geneva E. Fox, Louis S. Grubb,
Evelyn F. Grubb, William M. Kipp, Gayle Kipp, Clyde B.
Smith, Peggy J. Smith and John B. Stiteler,
Defendants-Appellees- Cross-Appellants.
 Nos. 96-16157, 96-16465.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 4, 1997.
Decided Jan. 5, 1998.
 
 1
 Ann S. DuRoss, Robert D. McGillicuddy, Michelle Kosse, Kathleen V. Gunning, Karen Caplan (argued), Federal Deposit Insurance Corporation, Washington, D.C., and Marc Kalish, Kalish, Forrester & Torres, Phoenix, Arizona, for appellants.
 
 
 2
 Lonnie J. Williams (argued), Martha E. Gibbs, Brian J. Foster, Snell & Wilmer, Phoenix, Arizona, for appellees Harry and Geri Cavanagh.
 
 
 3
 Bart J. Patterson, Daughton & Patterson, Phoenix, Arizona, for appellees Richard and Wanda Jackson.
 
 
 4
 Hubert W. Green, Michael L. McReynolds, Green, McReynolds & Harkins, San Antonio, Texas, for appellees Clyde and Peggy Smith.
 
 
 5
 Daniel Cracchiolo, David M. Villadolid, Burch & Cracchiolo, Phoenix, Arizona, for appellees Clifton and Helen Cox, Louis and Evelyn Grubb, and John Stiteler.
 
 
 6
 David A. Damore, Vogel & Damore, Scottsdale, Arizona, for appellee James Fox.
 
 
 7
 Joseph A. Schenk, Hebert, Schenk & Johnsen, Phoenix, Arizona, and Daniel Cracchiolo, David M. Villadolid, Burch & Cracchiolo, Phoenix, Arizona, for appellees and cross-appellants Joseph and Marilyn Dupont.
 
 
 8
 Appeals from the United States District Court for the District of Arizona; Paul G. Rosenblatt, District Judge, Presiding. D.C. Nos. CV-92-1945-PGR, CV-93-0128-PGR and CV-93-0193-PGR.
 
 
 9
 Before: FLETCHER and REINHARDT, Circuit Judges, and WARDLAW, District Judge.*
 
 WARDLAW, District Judge:
 
 10
 The Federal Deposit Insurance Corporation ("FDIC") appeals adverse rulings in its actions asserting breach of fiduciary duty, negligence, and gross negligence against the directors of a failed Arizona bank, Century Bank ("Century" or the "Bank"), as well as spousal liability. It is the culmination of a sorry saga of alleged mismanagement by defendants, members of the Board of Directors of Century, a state-chartered, federally insured banking institution, at various times from the Bank's opening in January 1981 through October 1989. During most of this time, from October 1981 through October 1989, the FDIC, alone or jointly with the Arizona State Banking Department ("ASBD"), conducted yearly examinations of the Bank. These examinations repeatedly identified deficiencies in lending practices, including poor loan documentation, inadequate loss reserves, and inadequate commercial loan supervision. Each set of findings was presented to and acknowledged by the Board. Over the course of the Bank's existence, the examinations resulted in two memoranda of understanding between the regulators and the bank directors and two cease and desist orders. In October 1989, the FDIC and the ASBD jointly determined that Century was insolvent. The ASBD took control of Century and the Maricopa County Superior Court appointed the FDIC as receiver. These consolidated actions followed in 1992.
 
 
 11
 The district court in a series of orders resolved all issues in favor of the Bank's directors on various bases, with the result that all defendants were absolved of liability. On appeal the FDIC challenges the district court's interpretation of Arizona law; to wit, it held that an action against bank directors for negligence accrues at the date an improper loan is made; the doctrine of adverse domination does not toll the running of the statute of limitations absent fraudulent conduct; bank directors whose actions are unprotected by the business judgment rule are liable only for gross negligence. It also challenges the grant of summary judgment in favor of director Harry Cavanagh.
 
 
 12
 Defendants Joseph and Marilyn Dupont cross-appeal the denial of their motion to dismiss as to them. The district court held that the second amended complaint ("SAC") related back to the date of the original complaint, avoiding dismissal under Bankr.R. 4007(c); and that the SAC alleged sufficient facts to state a claim for fraud or defalcation against the Duponts as fiduciaries pursuant to 11 U.S.C. § 523(a)(4).[1]
 
 
 13
 A. Accrual Date Under the Statute of Limitations
 
 
 14
 We agree that under Arizona law the cause of action for negligence accrues against directors at the time of the approval of bad loans. See RTC v. Blasdell, 930 F.Supp. 417 (D.Ariz.1994).
 
 
 15
 In Blasdell, the Resolution Trust Corporation ("RTC") sued the directors of a failed bank for negligence, gross negligence, negligence per se, and breach of fiduciary duty. Blasdell, 930 F.Supp. at 419. The RTC argued there that the causes of action accrued at the time it became known that the loans would not be repaid, while the directors argued for accrual at the time the loans were approved or funded. Id. at 428. The court acknowledged that the RTC's argument, which "focuse[d] on loss rather than conduct, [was] not without some force." Id. at 429. "The incentive to bring suit based on the imprudent approval of a loan, other than to avoid limitations problems, is very low until the loan has gone into default or been declared a loss." Id.
 
 
 16
 Nonetheless, the court agreed with the directors:
 
 
 17
 Notwithstanding these considerations, director approval of bad loans is not something that cannot be discovered until default occurs, assuming that nothing is done to conceal the circumstances surrounding the loan approvals. In fact, as made clear by the RTC's evidence, federal regulators were aware of allegedly bad loans made by [the bank] long before default. In addition, banks sustain injury as soon as bad loans are funded: money that should not have left the bank is gone. The general rule is that "a statute of limitations begins to run against an action against directors of a corporation for malfeasance or nonfeasance from the time of the perpetration of the wrongs complained of." No Arizona case cited to the court calls into question the general rule. Thus, the court concludes that the cause of action accrued at the time the allegedly bad loans were made.
 
 
 18
 Blasdell, 930 F.Supp. at 430.
 
 
 19
 The rule of Blasdell has particular force here. The complaint alleges damages not from nonpayment of the loans, but from negligent practices over time which led to nonpayment.
 
 
 20
 The FDIC relies upon cases involving suits for collection of unpaid monies. However, collection causes of action accrue when the money is due. Such cases are inapplicable to the claims here.[2] See, e.g., Baca v. Bank of Am. Nat'l Trust & Sav. Ass'n, 99 Ariz. 352, 409 P.2d 52, 52 (.1965); Groves v. Sorce, 161 Ariz. 619, 780 P.2d 452, 454 (1989); Cheatham v. Sahuaro Collection Serv., Inc., 118 Ariz. 452, 577 P.2d 738, 740 (1978).
 
 
 21
 The FDIC further analogizes to Arizona case law regarding accrual of causes of action for professional negligence. Yet the reasoning of these cases generally supports the district court's finding. See Kenyon v. Hammer, 142 Ariz. 69, 688 P.2d 961, 965 (1984) (cause of action accrues at date patient experienced harm from negligence, which in that case was the date of the negligent act although the patient did not know she was harmed until years later); Sato v. Van Denburgh, 123 Ariz. 225, 599 P.2d 181 (1979) (cause of action for accountant's negligence accrued when the negligent acts were done). Legal negligence cases have favored a later date, but are based on policy rationales absent here. See, e.g., Amfac Distr. Corp. v. Miller, 138 Ariz. 152, 673 P.2d 792, 794 (1983) (no cause of action for legal malpractice occurring during litigation until final harm has occurred, even where the negligence is known earlier); Environmental Liners, Inc. v. Ryley, Carlock & Applewhite, 187 Ariz. 379, 930 P.2d 456, 461-62 (1996) (legal malpractice claimant must sustain actual, irremediable, nonspeculative harm in order to sue, requiring a resolution of pending litigation); cf. Taylor v. State Farm Mut. Auto. Ins. Co., 185 Ariz. 174, 913 P.2d 1092, 1096-97 (1996) (indicating that because harm from legal malpractice is not known until the appellate process is complete, and because the attorney/client relationship must be respected until conclusion of the matter giving rise to the claim, the cause of action accrues later).
 
 
 22
 We hold that the district court correctly interpreted Arizona law to place the accrual date of the cause of action at the time the negligence itself occurred. Any possible inequity in this result due to the FDIC's prior inability to sue may be mitigated by the application of the adverse domination doctrine.B. Tolling of the Statute of Limitations Under the Theory of Adverse Domination
 
 
 23
 The more significant issue in this case is whether the doctrine of adverse domination, which may allow tolling for claims alleging wrongdoing by those who control the corporation, would act to toll the statute of limitations. We disagree with the district court's conclusion that Arizona would apply the doctrine only where fraudulent director conduct is alleged.
 
 
 24
 Logical and practical inconsistencies result from the district court's holding that adverse domination tolls the statute of limitations only in instances of fraudulent director conduct. As both the district court in this case and the Blasdell court correctly held, a cause of action in Arizona for negligent loan approval accrues at the date the loan is approved. However, the district court's ensuing interpretation of the adverse domination doctrine would virtually preclude the FDIC from ever pursuing negligent directors.
 
 
 25
 The Blasdell decision, followed by the district court,[3] recognized that Arizona law controls, and that although no Arizona case had expressly adopted it, "Arizona courts would recognize the doctrine of adverse domination in cases in which directors' control of a corporation reasonably prevented others from discovering the directors' wrongdoing." Blasdell, 930 F.Supp. at 430. However, the Blasdell court, based on its reading of other states' application of the doctrine, particularly that of California and Texas, concluded that allegations of fraudulent or other intentional misconduct are necessary to invoke the doctrine. Id. We disagree with the Blasdell reasoning that insulates directors from liability for their negligence. We find the reasoning in Hecht v. RTC, 333 Md. 324, 635 A.2d 394, 406 (1994), more persuasive. In Hecht, the Maryland Court of Appeals analogized from Maryland's discovery rule to hold adverse domination applicable to negligence actions:
 
 
 26
 There are situations other than those which involve fraud where a corporation can be blamelessly unaware of a potential claim against directors and officers. Indeed, the directors and officers may be so disengaged from their responsibilities that they themselves are unaware of the breach of their duty to the corporation. Under these conditions, there is hardly greater likelihood that the corporation will be able to discover the cause of action.
 
 
 27
 Id.
 
 
 28
 We believe that the Arizona Supreme Court would likely adopt the Hecht approach rather than limit the adverse domination doctrine to actions in which fraudulent or intentional misconduct are alleged. First, Arizona appears to have recognized fraudulent concealment and adverse domination as distinct tolling doctrines. See Tovrea Land & Cattle Co. v. Linsenmeyer, 100 Ariz. 107, 412 P.2d 47, 63-64 (1966). Second, the Arizona Supreme Court has generally favored use of the "discovery rule," that a plaintiff's action does not accrue until plaintiff knows or should have known the underlying facts; and has disfavored the defense of statute of limitations. See Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am., 182 Ariz. 586, 898 P.2d 964, 968 (1995) (finding discovery rule to apply to cause of action in contract). Third, the court has recognized that it has a "legitimate interest in the procedural rules that govern lawsuits, especially to prevent such rules from becoming a shield for serious inequity." Hosogai v. Kadota, 145 Ariz. 227, 700 P.2d 1327, 1331 (1985) (applying equitable tolling doctrine to wrongful death action when first action was dismissed for procedural defects).
 
 
 29
 Because applying the adverse domination doctrine to negligent conduct is more consistent with its past approach, we hold that the Arizona Supreme Court would find that, at a minimum, gross negligence, rather than merely fraud or intentional misconduct, tolls the statute of limitations. Accordingly, we reverse the district court's holding on this point.
 
 C. Summary Judgment
 
 30
 The district court granted summary judgment in favor of director Harry Cavanagh and his wife. This holding was erroneous for two reasons. First, the court misapplied the business judgment rule, holding that the Arizona standard for corporate director liability is gross negligence. Second, even applying the district court's liability standard, it erroneously disregarded genuine issues of material fact.
 
 
 31
 1. Standard of Liability Under the Business Judgment Rule
 
 
 32
 The district court dismissed all of the FDIC's claims for simple negligence, applying the identical standard of liability for directors' decisions without regard to whether they fell within or without the business judgment rule:
 
 
 33
 The standard of liability in Arizona for corporate directors is gross negligence. This standard applies to the defendants' business decisions falling within the ambit of the business judgment rule, and to their business decisions that the plaintiff allege[s] fall outside the ambit of the rule, such as those that the defendants allegedly made without informing themselves of all material information reasonably available to them, as well as to the allegations that the defendants abdicated their responsibilities as directors of Century Bank.
 
 
 34
 March 1995 Order at 2, ER Ex. 3.
 
 
 35
 By so holding, the district court eviscerated the business judgment rule of any meaningful application and granted to all directors the protections previously afforded only those who in good faith exercised their business judgment in the conduct of the corporation's regular affairs. This was in error because, under Arizona law, while a gross negligence standard is appropriate to impose liability for acts within the scope of the business judgment rule, a higher standard of liability, simple negligence, will apply when the act is outside the scope of the rule.
 
 
 36
 Arizona's courts have long applied a gross negligence/simple negligence dichotomy depending on whether the alleged wrongful acts fall within or without the ambit of the business judgment rule.[4] The two most recent and thorough analyses of the applicable standard, however, come from two federal district courts in Arizona. The first, RTC v. Dean, 854 F.Supp. 626 (D.Ariz.1994), determined that to impose liability the business judgment rule requires gross negligence, but that where an act is outside the business judgment rule, that is, where a director acts outside of his role, simple negligence is the appropriate standard. Dean, 854 F.Supp. at 635-36. In Blasdell, decided only a few months later, another district court reached the opposite conclusion. That court cited Dean for the proposition with which it agreed, that where the business judgment rule did apply, gross negligence must be shown to establish director liability. Blasdell, 930 F.Supp. at 424. The court next addressed the applicable standard when the business judgment rule was not involved. Without distinguishing or even citing Dean 's holding on this point, the court "conclude[d] that the Arizona courts would not impose liability on directors in the abdication context unless their conduct amounted to gross negligence." Blasdell, 930 F.Supp. at 426.[5] Blasdell reached its conclusion as to the Arizona standard without reference to any Arizona law whatsoever.
 
 
 37
 Logically, two different standards must apply to acts within and without the business judgment rule; otherwise the rule has no meaning or purpose. If the business judgment rule insulates covered acts from charges of simple negligence, then it follows that a simple negligence standard must generally apply to acts outside the rule. We therefore find that under Arizona law, where the business judgment rule applies to the conduct of a director, a showing of gross negligence is necessary to strip the director of the rule's protection. Where the threshold requirements of the rule are not met, however, a showing of simple negligence can be sufficient to impose liability on the director.
 
 2. Factual Issues
 
 38
 The district court also erred in granting summary judgment by failing to recognize critical facts distinguishing Cavanagh's role from that of other directors. The district court had earlier granted judgment for Director Brown, finding that he was presumptively entitled to the benefit of the business judgment rule, and that the FDIC's evidence was insufficient to demonstrate a factual dispute as to his entitlement. The court held that Brown's deposition testimony, affidavit and other evidence showed the absence of facts supporting the FDIC's claims. Further, the FDIC's evidence was insufficient to show that Brown had breached the applicable standard of care, which it had determined, in the same order, was gross negligence. The FDIC subsequently stipulated that Directors Peters and Edmonds were not liable for gross negligence and therefore were protected by the business judgment rule to the same extent as Brown.[6]
 
 
 39
 In granting Cavanagh's motion, the district court relied on this stipulation, holding that the FDIC had failed to establish that Cavanagh had not exercised the same business judgment as Brown, Peters, and Edmonds in his actions during the relevant October 1987 to October 1989 period. Therefore, "the Court conclude[d] as a matter of law that Cavanagh and his wife are entitled to summary judgment because his conduct of record during the relevant limitations period in approving the same transactions cannot rise to the level of gross negligence no matter how that term is defined." March 22, 1996 Order at 10, ER Ex. 6.
 
 
 40
 The determination whether a corporate director has properly discharged his duties is a question of fact. See RTC v. Dean, 854 F.Supp. at 639. In particular, the determination of whether a party is liable for gross negligence "is a matter of fact that must be left to the determination of the reasonable persons making up the trier of fact." Chemical Bank v. Security Pac. Nat'l Bank, 20 F.3d 375, 378 (9th Cir.1994). Here, witness credibility, a matter particularly within the province of the factfinder, see Hanon v. Dataproducts Corp., 976 F.2d 497, 507 (9th Cir.1992), is clearly at issue, especially in view of the fact that the only evidence submitted is the testimony of the defendant and of experts.
 
 
 41
 The district court improperly evaluated the evidence under summary judgment standards. It failed to recognize that the character of Cavanagh's actions in reviewing and approving loans was quite distinct from that of Brown, Peters, and Edmonds. The expert witness testimony before the court specifically singled out the latter three for lesser liability based on their date of entry onto the Board. See, e.g., Affidavit of Sidney C. Mar Ex. B at 1-2, ER Ex. B. "To the extent that the new Board members, Messrs. Brown, Peters, and Edmonds, participated in decisions to grant or renew troubled loans during their relatively brief tenures, those actions may be protected under the 'business judgment' rule." Mar Aff. Ex. B at 5, ER Ex. B. On the other hand, as related to pre-1987 directors:
 
 
 42
 [i]n light of the considerable regulatory criticism and enforcement actions, the Board should have known that its passivity and over-reliance on management was imprudent and a complete abdication of the directors' responsibilities. Moreover, the Board should have been aware that the Bank's continued failure to adhere to regulations and regulatory directives, resulting in numerous regulatory enforcement actions, was an undesirable condition that should have been corrected immediately.
 
 
 43
 Id. at 5-6. As an original director charged with greater involvement and greater fault in contributing to the Bank's condition over time, Cavanagh was potentially chargeable with greater knowledge and historical context than the other three. The evidence suggests that as a prior director, Cavanagh may have provided a source of expertise on which the later directors relied. Mar Aff. Ex. C at 6. The expert report of James A. Beeson, ER Ex. F at 3, suggests that because many of the problems came from continued reliance on management, directors who were aware of the problems violated their duties in continuing to so rely:
 
 
 44
 Of special concern is the fact that the majority of the Board members held office for this entire period [1983-1989], which covers at least three different senior management groups. The Board's reliance on the original management team might be justified based upon their past history as savings and loan association executives, but the continued reliance on successor management in light of the constan[t] criticism by the regulatory bodies indicates a very serious disregard for the duties and responsibilities as directors.
 
 
 45
 Id. at 3. The expert report of Bradford T. Tope, Ex. H at 2, in criticizing this abdication of responsibility to management, notes: "Once [the directors] acknowledged the problem [of reliance on management] presented to them by the regulators, their direct involvement in the decision making process should have been paramount in their minds."
 
 
 46
 This evidence demonstrates a genuine issue as to material facts regarding the alleged negligence of Cavanagh as compared with the conduct of the newer directors. Cavanagh may be chargeable with an historical perspective regarding regulatory problems and actions that the other directors did not have, and therefore may have acted less reasonably. This factual dispute precludes summary judgment, even assuming that the relevant transactions are limited to the period between October 1987 and October 1989.[7] Therefore, we reverse the district court and remand this issue for trial.
 
 D. Duponts' Cross-Appeal
 1. Relation Back
 
 47
 The district court denied the Duponts' motion to dismiss on statute of limitations grounds, finding that the second amended complaint related back to the filing date of the original complaint and thus was timely under Bankr.R. 4007(c).[8] We agree that the FDIC's complaint against the Duponts was timely under this section.
 
 
 48
 The district court correctly found that the second amended complaint related back to the original complaint pursuant to Fed.R.Civ.P. 15. While it is generally true that an amendment supersedes an original pleading, see Bullen v. DeBretteville, 239 F.2d 824, 833 (9th Cir.1956), cert. denied sub nom. Treasure Co. v. Bullen, 353 U.S. 947, 77 S.Ct. 825, 1 L.Ed.2d 856 (1957); Loux v. Rhay, 375 F.2d 55, 57 (9th Cir.1967), this Circuit has held that the filing date of an original complaint remains operative for relation-back purposes even where otherwise superseded by amendments. Martell v. Trilogy Limited, 872 F.2d 322, 323 (9th Cir.1989); Ashland v. Ling-Temco-Vought, Inc., 711 F.2d 1431, 1436-37 (9th Cir.1983).
 
 
 49
 Further, the original and second amended complaints plainly arise from the same transactions, and specifically refer to nondischargeability of Dupont's liability under 11 U.S.C. § 523(a)(4). "In determining whether an amended cause of action is to relate back, the emphasis is not on the legal theory of the action, but whether the specified conduct of the defendant, upon which the plaintiff is relying to enforce his amended claim, is identifiable with the original claim." Gelling v. Dean (In re Dean), 11 B.R. 542, 545 (9th Cir. BAP 1981), aff'd, 687 F.2d 307 (9th Cir. 1982); see also Mission Viejo Nat'l Bank v. Englander (In re Englander), 92 B.R. 425, 427-28 (9th Cir. BAP 1988). Where an amended pleading seeks only to add new claims to an original pleading, "the district court should ... analyze[ ] the two pleadings to determine whether they share a common core of operative facts sufficient to impart fair notice of the transaction, occurrence, or conduct called into question." Martell, 872 F.2d at 327.
 
 
 50
 In this case, the original complaint contains all of the allegations against Dupont later restated in the second amended complaint. The Duponts may not realistically claim that they were not on notice of the claims against them.
 
 2. Section 523(a)(4) Motion to Dismiss
 
 51
 The district court correctly denied the Duponts' motion to dismiss the complaint for failure to state a claim under 11 U.S.C. § 523(a)(4), finding the allegations sufficient to meet the requirements of that section.
 
 
 52
 The section exempts certain prepetition debt from discharge in bankruptcy:
 
 
 53
 A discharge under ... this title does not discharge an individual debtor from any debt-
 
 
 54
 ...
 
 
 55
 (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny....
 
 
 56
 11 U.S.C. § 523(a)(4). The following provision was added to the statute by the Crime Control Act of 1990: "Any institution-affiliated party of an insured depository institution shall be considered to be acting in a fiduciary capacity with respect to the purposes of subsection (a)(4)...." 11 U.S.C. § 523(e).[9]
 
 
 57
 Nondischargeability of the Duponts' liability under Section 523(a)(4) thus requires a determination of (1) the existence of a fiduciary relationship; and (2) acts of defalcation. In re Chavez, 140 B.R. 413, 422 (Bankr.W.D.Tex.1992). Both elements are alleged here.
 
 
 58
 First, Joseph Dupont was a fiduciary of the Bank under Section 523(e). Evidence in the legislative history evinces a clear intent to apply that section retroactively:
 
 
 59
 These are changes to the Bankruptcy Code which close off the bankruptcy escape hatch for bank and thrift insiders whose acts of financial fraud and malice will end up adding perhaps half a trillion dollars to the Federal debt. These provisions are narrowly crafted to hit only those who committed the worst abuses in the heyday of the Reagan deregulation era. But for those few who have been at the helm of one of the worst financial scandals in history, the hit will be hard. ... [W]e intend that such term ["institution-affiliated parties"] and the related bankruptcy provisions be applied to punish only those persons who personally were involved in wrongful acts that jeopardized the financial health of an insured depository institution.
 
 
 60
 136 Cong. Rec. H13, 289 (1990) (emphasis added); see also H.R.Rep. No. 101-681(I), 2d Sess. 179 (1990). The intent to apply the section to ensure coverage of those previously involved in the banking crisis is clear. The case law supports this interpretation:
 
 
 61
 The fact that the Crime Control Act of 1990 became effective after the transactions of the debtor is irrelevant. The Congressional intent is clear that the officers and directors who were most responsible for the collapse of the savings and loan industry would not be allowed to discharge the debts which accrued due to their improprieties. Had Congress merely intended to give the amendment postscriptive effect, the bulwark of the debt of the present crisis would have been left unaffected.
 
 
 62
 Chavez, 140 B.R. at 422 (citations omitted); see also FDIC v. Gaubert (In re Gaubert), 149 B.R. 819 (Bankr.E.D.Tex.1992).
 
 
 63
 Further, Joseph Dupont acted in a fiduciary capacity under Arizona law. For the purposes of Section 523(a), the existence of a fiduciary relationship is determined under federal law, but with reference to state law. Lewis v. Scott (In re Lewis), 97 F.3d 1182, 1185 (9th Cir.1996). Under Arizona law, a corporate director is a fiduciary of the corporation. See Master Records, Inc. v. Backman, 133 Ariz. 494, 652 P.2d 1017, 1020 (1982); Atkinson v. Marquart, 112 Ariz. 304, 541 P.2d 556, 558 (1975); Shoen v. Shoen, 167 Ariz. 58, 804 P.2d 787, 795 (1991); Rhoads v. Harvey Publications, Inc., 145 Ariz. 142, 700 P.2d 840, 847 (1984).
 
 
 64
 The second amended complaint also sufficiently alleges acts of defalcation as required by 11 U.S.C. § 523(a)(4). In Lewis, a case decided under Arizona law and not cited by Appellees, we held that defalcation, at least for the purposes of nondischargeability under Section 523(a)(4), includes any behavior by a fiduciary, including innocent, negligent, and intentional defaults of fiduciary duty resulting in failure to provide a complete accounting. Lewis, 97 F.3d at 1186 (citing Lewis v. Short (In re Short), 818 F.2d 693, 694 (9th Cir.1987); Woodworking Enters., Inc. v. Baird (In re Baird), 114 B.R. 198, 204 (9th Cir. BAP 1990)). Although those cases involved allegations of such improper accounting, Lewis held that "[a]n individual may be liable for defalcation without having the intent to defraud." Lewis, 97 F.3d at 1187; see also Kaufman v. Tallant (In re Tallant), 207 B.R. 923, 929 (Bankr.E.D.Cal.1997) ("If the relationship between the debtor and the creditor falls within this [fiduciary] provision, then the slightest defalcation will render the resulting debt nondischargeable." (citing Lewis, 97 F.3d at 1186)).
 
 
 65
 Therefore, under our Circuit's standard, the allegations of the second amended complaint are sufficient to state a claim that would support liability against the Duponts. It alleges Joseph Dupont's involvement in imprudent loan approvals, approval of minutes of meetings evidencing the problems, and violations of numerous fiduciary obligations sufficient to support at least negligence, if not gross negligence. Thus, the second amended complaint properly states a claim under 11 U.S.C. § 523(a)(4).
 
 E. Conclusion
 
 66
 We affirm the district court's decisions as to the determination of the accrual date and as to the issues raised by the Duponts on cross-appeal. However, we reverse the district court's decisions with regard to the application of the adverse domination doctrine, the application of a gross negligence standard to bank directors acting outside the scope of the business judgment rule, and the grant of summary judgment in favor of Cavanagh. The case is remanded to the district court for proceedings consistent with this opinion.
 
 
 67
 AFFIRMED IN PART, REVERSED IN PART.
 
 
 
 *
 Honorable Kim McLane Wardlaw, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 This Court has jurisdiction over these appeals pursuant to 28 U.S.C. § 1291 and 12 U.S.C. § 1819(b)(2). We review all questions raised in these appeals de novo. See Salve Regina College v. Russell, 499 U.S. 225, 237, 111 S.Ct. 1217, 1224, 113 L.Ed.2d 190 (1991) (district court's interpretation of state law); Churchill v. F/V Fjord (In re McLinn), 739 F.2d 1395, 1397 (9th Cir.1984) (en banc) (same); Huey v. Honeywell, Inc., 82 F.3d 327, 329 (9th Cir.1996) (grant of summary judgment); NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir.1986) (dismissal for failure to state a claim); Herndon v. de la Cruz (In re de la Cruz), 176 B.R. 19, 22 (9th Cir. BAP 1994) (application of Bankr.R. 4007(c))
 
 
 [2]
 Contrary to the view urged by the FDIC, we note a trend in the law that places the accrual date when the loan is made. See, e.g., RTC v. Seale, 13 F.3d 850, 852 (5th Cir.1994) (Texas law); RTC v. Artley, 28 F.3d 1099, 1102 (11th Cir.1994) (Georgia law); Farmers & Merchants Nat'l Bank v. Bryan, 902 F.2d 1520, 1522 (10th Cir.1990) (federal law); RTC v. Chapman, 895 F.Supp. 1072, 1075 (C.D.Ill.1995) (Illinois law); see also Corsicana Nat. Bank of Corsicana v. Johnson, 251 U.S. 68, 40 S.Ct. 82, 64 L.Ed. 141 (1919) (federal law)
 
 
 [3]
 The district court here addressed the doctrine's application as follows:
 The FDIC's argument that the Arizona courts would adopt the expansive view that simple negligence can toll the statute of limitations for claims against corporate directors under the adverse domination doctrine is at odds with the fact that the Arizona courts have historically adopted a narrow view of the equitable exceptions, such as fraudulent concealment, to statutes of limitations. The Court thus concludes that the equitable tolling doctrine has no applicability to this action as a matter of law inasmuch as the second amended complaint does not charge the defendants with any type of fraud or intentional misconduct.
 March 22, 1996 Order at 5, ER Ex. 6.
 
 
 [4]
 Arizona's business judgment rule was first enunciated in Fagerberg v. Phoenix Flour Mills Co., 50 Ariz. 227, 71 P.2d 1022, 1024-25 (1937):
 It is the general rule that officers and directors of a corporation are authorized to handle the ordinary business affairs of the corporation according to their best judgments, and, if acting in good faith within the scope of the corporation's ordinary business, they commit errors of judgment, they are not liable therefor, but it is equally true that, if they go outside of the ordinary and usual business of the corporation and engage in transactions unauthorized by its articles of incorporation and not within the ordinary scope of its business, without the consent or ratification of the stockholders, then good faith will not excuse them from responsibility to the corporation for any losses which they may have incurred by reason of their unauthorized and illegal conduct. These two propositions are so elementary that we think it a waste of space to cite authorities to support them.
 Fagerberg, 71 P.2d at 1024-25; see also Atkinson v. Marquart, 112 Ariz. 304, 541 P.2d 556, 557 (1975); Tovrea, 412 P.2d at 56-57; Bischofshausen, Vasbinder & Luckie v. D.W. Jaquays Mining & Equip. Contractors Corp., 145 Ariz. 204, 700 P.2d 902, 908-09 (1985); Jabczenski v. Southern Pac. Mem. Hosps., Inc., 119 Ariz. 15, 579 P.2d 53, 58 (1978); Kadish v. Phx.-Scotts. Sports Co., 11 Ariz.App. 575, 466 P.2d 794, 797 (1970).
 
 
 [5]
 Similarly, the district court below relied on only those portions of the Dean decision with which it apparently agreed, and ignored the rulings with which it differed
 
 
 [6]
 Brown, Peters, and Edmonds were all formerly directors of Albuquerque Federal Savings and Loan Association, which acquired control of Century in August 1987. Brown and Peters joined the Century Board at that time, while Edmonds joined in July 1988
 
 
 [7]
 Appellees' argument that the expert reports are worthless because they allude to federal, not state, standards of conduct, are not addressed here because the expert reports are relied upon not to establish breach of a standard of care, but rather to factually distinguish Cavanagh from Brown, Peters, and Edmonds
 
 
 [8]
 Bankr.R. 4007(c) reads:
 A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a). The court shall give all creditors not less than 30 days notice of the time so fixed in the manner provided in Rule 2002. On motion of any party in interest, after hearing on notice the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.
 
 
 [9]
 This adopts the definition of "institution-affiliated party" as used in the Federal Deposit Insurance Act, 12 U.S.C. § 1813(u). See H.R.Rep. No. 101-681(I), 2d Sess. 179 (1990)